**John Henry DOOLEY, Jr. P-3111**

v.

**George PETSOCK.**

**Appeal of John Henry DOOLEY, Jr., Appellant.**

**No. 86–3257.**

United States Court of Appeals, Third Circuit.

Argued March 3, 1987.

Decided April 22, 1987.

Rehearing and Rehearing En Banc Denied June 1, 1987.

George E. Schumacher, Federal Public Defender, Frank Arcuri (argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

John M. Dawson, Dist. Atty., Nancy Lynn Edleman (argued), Meadville, Pa., for appellee.

Before GIBBONS, Chief Judge, SEITZ and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

On this appeal we review the district court's summary dismissal of a habeas corpus petition. The petition essentially raises a two-part ineffective assistance of counsel claim against the petitioner's original trial counsel. We affirm.

### I.

In 1974, John Henry Dooley faced an arson charge in the Court of Common Pleas of Crawford County, Pennsylvania. Douglas Ferguson, an assistant public defender, was appointed to serve as Dooley's legal counsel. In a preliminary hearing held in July of 1974, Paul Shafer, the district attorney, attempted to show that Dooley was a suspect in some other fires for which he had not then been charged. At the preliminary hearing, Ferguson became aware of Shafer's intention to make an offer of proof at Dooley's trial in regard to two of these uncharged fires—the "Floch" and "Dunn" fires. A jury trial was held, and Shafer made an offer of proof at trial as to the uncharged Floch and Dunn fires in an attempt to establish a pattern of arsons. Defense attorney Ferguson successfully managed to exclude this evidence. Upon conclusion of the trial, the jury found Dooley not guilty of the single arson charge.

On June 30, 1977, Dooley was arrested in connection with a house fire that occurred in Meadville, Pennsylvania (Crawford County). After being interviewed at the City Police Station by Lieutenant Bernard Stein and Sergeant Robert Mullen, Dooley was charged with arson and incarcerated in the Crawford County Jail. The next day Dooley attempted suicide by slashing his wrists with a porcelain light bulb holder. He was taken to the hospital for treatment and thereafter returned directly to the jail. On July 8, 1977, Robert Campbell, an assistant public defender, was assigned to represent Dooley.

At some time prior to Dooley's second arson arrest, his former defense counsel, Douglas Ferguson, had become the Crawford County District Attorney. On three occasions after Dooley's arrest, he was taken to District Attorney Ferguson's office for questioning. The first two of these interviews occurred on July 22, 1977, and

the third occurred on July 26, 1977. Dooley waived his right to counsel on all three occasions, stating that he did not desire to have Campbell present at the interviews.

During the first interview, Lieutenant Stein and District Attorney Ferguson were present, and Stein asked most of the questions. During the second interview, which was conducted later that same day, Stein, Robert Bailey (an assistant district attorney), and Ferguson, who conducted the interview, were present.

On July 25, 1977, Dooley again tried to commit suicide by slashing his wrists. He received emergency room treatment and was taken for an emergency psychiatric evaluation before Dr. Mesa. Dr. Mesa listened to Dooley for half an hour, and although admitting that he was "without enough background," Dr. Mesa concluded that Dooley had an anti-social personality and was a con artist who did not suffer from mental illness. Supplemental Appendix at 4. Dooley was immediately returned to the Crawford County Jail.

Dooley's third interview was conducted at District Attorney Ferguson's Office on the day following the second suicide attempt. Both Stein and Ferguson were present, and Ferguson conducted the interview. Dooley was subsequently charged in eight criminal informations in the Court of Common Pleas of Crawford County. He was charged with five single counts of arson, two combined counts of arson and endangering property, and one count of escape. Two of the arson counts involved the Floch and Dunn fires which had been the subject of the offer of proof during Dooley's trial on the 1974 arson charge—the trial at which Ferguson had served as his defense counsel.

On September 20, 1977, Dooley pled guilty before the Honorable F. Joseph Thomas, pursuant to a plea bargain, to five counts of arson and one count of escape. The Floch and Dunn fires were two of the arson counts that Dooley pled guilty to. At the plea colloquy, Dooley was represented by Attorneys Campbell and Musika, the latter acting as co-counsel with Campbell for purposes of the plea. Neither Musika nor Campbell had requested an evidentiary hearing to determine whether Dooley was competent to enter his guilty plea. As part of the plea bargain, Musika did, however, request a psychiatric examination prior to sentencing. The court entered an order committing Dooley to the State Correctional Diagnostic and Classification Center at Pittsburgh for a period not to exceed 60 days in order to obtain a psychiatric and psychological evaluation to aid in the sentencing decision.

Four doctors submitted psychiatric or psychological reports to the Pennsylvania court. Two of these reports generally supported the conclusion that Dooley was suffering from schizophrenia or other severe mental illness. Appendix at 371–74. The remaining two reports did not support such a conclusion. Supplemental Appendix at 5.

On January 17, 1978, Dooley was sentenced to a term of two to five years on the escape charge and a term of four to eight years on each of the five arson counts. All sentences were to be served consecutively, giving Dooley a minimum term of 22 years and a maximum term of 45 years. Dooley was unsuccessful in his state appeals of his convictions.

On February 7, 1978, Dooley filed his first petition under the Pennsylvania Post Conviction Hearing Act (P.C.H.A.). On February 24, 1978, Dooley filed a petition to withdraw his guilty plea. This order was denied, and Judge Thomas entered an order appointing new counsel (Thomas E. Lindquist) for Dooley for this first P.C.H.A. proceeding.

Dooley's amended petition raised two grounds for relief. First, Dooley claimed that, Campbell and Musika, his original counsel, had promised him that he would be sentenced to Warren State Hospital for five years if he accepted the plea bargain. Second, Dooley claimed that he was unlawfully induced to enter his guilty plea because he had made inculpatory statements in exchange for additional visitation and telephone rights while incarcerated at the Crawford County Jail. No ineffective assistance of counsel claim against Campbell was raised. A hearing was held on Octo-

ber 24, 1978, and the petition was denied on January 29, 1979. On August 22, 1980, the Superior Court of Pennsylvania affirmed the denial of the petition.

In May or June of 1981, Dooley filed his second P.C.H.A. petition. Evidentiary hearings in the Pennsylvania Court of Common Pleas were held before Judge Walker on June 10 and June 14, 1983. At these hearings, Dooley was represented by Attorney M. Dan Mason. Dooley raised two grounds for relief. First, he claimed that Campbell had not provided him with effective assistance of counsel in that Campbell had not sought an evidentiary hearing to determine whether Dooley was competent to enter his guilty plea. Second, he claimed that Campbell was ineffective in failing to request that Ferguson, the district attorney, be disqualified from prosecuting Dooley because of Ferguson's prior representation of Dooley on a similar arson charge.

On October 20, 1983 Dooley's second P.C. H.A. petition was denied. Judge Walker found that Dooley had been fully able to assist Campbell in his defense, and that Campbell was not ineffective for failing to seek an evidentiary hearing regarding Dooley's competency. Judge Walker also found that Dooley had produced no evidence to sustain his burden on the ineffective assistance of counsel claim premised on Campbell's failure to move for Ferguson's disqualification. The denial of Dooley's second P.C.H.A. petition was affirmed by the Superior Court and the Supreme Court of Pennsylvania.

On November 29, 1985, Dooley filed a petition for writ of habeas corpus in the United States District Court of the West-

ern District of Pennsylvania. Dooley's petition stated the grounds for which he was seeking relief in federal court as "ineffective counsel/double jeopardy." Appendix at 357.

On January 22, 1986, the district court ordered Dooley to file an amendment to his petition specifying and particularizing the allegations made in his petition for habeas corpus. Appendix at 362. Dooley submitted a motion for appointment of counsel to assist him in the preparation of his additional submissions. The district court denied this motion. As an amendment to his petition, Dooley then submitted to the district court a copy of the brief prepared by Attorney Mason, which had previously been submitted to the Pennsylvania state court, as well as psychological evaluations of himself.

█ On the basis of these documents, the district court construed Dooley's petition as raising two ineffective assistance of counsel claims against Campbell for (1) failing to request an evidentiary hearing regarding Dooley's competency to stand trial or plead guilty, and (2) failing to seek District Attorney Ferguson's disqualification from prosecuting the case on the basis of Ferguson's earlier representation of Dooley on a similar charge.[1] The district court dismissed Dooley's petition for habeas corpus relief. Appendix at 410. This court granted a certificate of probable cause and appointed counsel to represent Dooley on appeal.

On appeal, Dooley renews his ineffective assistance of counsel claims. Dooley's position, as explained during oral argument,

---

**1.** Dooley had also originally attempted to raise a double jeopardy claim both before the district court and before this court. However, Dooley had never raised a double jeopardy claim before the state courts. Therefore, Dooley's federal habeas petition was a mixed petition as defined in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and *Slotnick v. O'Lone*, 683 F.2d 60 (3d Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983). The district court denied both claims of ineffective assistance of counsel on the merits and declined to reach the merits of the double jeopardy claim, holding that it was unexhausted.

The district court erred; it instead should have dismissed the petition, thereby giving Dooley the choice of returning to state court or refiling his federal petition with the unexhausted claim deleted.

Prior to oral argument, counsel for Dooley moved before this court to delete the double jeopardy claim. Counsel represented that it was indeed Dooley's preference to delete this claim rather than return to state court for consideration of that issue. We granted Dooley's motion. Thus, the remaining exhausted claims are properly before us.

is that the record as it currently exists is sufficient for this court to reach a decision on the merits of the mental competency question, but that an evidentiary hearing with appointed counsel is necessary before we can reach the merits of the "ineffective assistance/disqualification" question.

## II.

■ We conclude that Dooley's counsel was not ineffective for failing to request an evidentiary hearing regarding Dooley's competency to stand trial or plead guilty. Ineffective assistance of counsel involves satisfaction of a two-part test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first question to be answered is whether counsel's performance fell below the range of competence normally demanded of attorneys in criminal cases. The second question we must answer is whether any such failure resulted in prejudice to the defendant. *Id.* at 687, 104 S.Ct. at 2064. The two-part *Strickland* test is also applicable to petitioners who challenge the effectiveness of counsel after the entry of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To succeed on such a claim, the petitioner must prevail on both tests, i.e., this court must answer both questions in the affirmative.

■ Giving due consideration to the findings of fact made by the Pennsylvania court which conducted Dooley's second P.C.H.A. hearing, we conclude that Campbell's failure to request an evidentiary hearing on Dooley's competence did not result in representation that fell below an acceptable range of competence.[2]

The test for competency to stand trial or enter a guilty plea is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of understanding—and whether he has a

rational as well as factual understanding of the proceedings against him." *United States ex rel. McGough v. Hewitt*, 528 F.2d 339 (3d Cir.1975). In Dooley's second P.C. H.A. case, the Pennsylvania court found as a fact not only that Dooley had been able to communicate with Campbell, his trial counsel, but also that Dooley had been able to cooperate with and assist Campbell in the preparation of his defense. Supplemental Appendix at 8. The court also found as a fact that Dooley's cooperation and communication and Campbell's perception of Dooley's mental stability, were factors that led Campbell to conclude that there was no basis for raising Dooley's competency as an issue. Finally, the court noted that "[Dooley's] vivid recollection of the events surrounding the charges during the P.C.H.A. hearing, support the fact that he was able to understand the nature of the charges against him." *Id.* Judge Walker concluded that Campbell had a reasonable basis for not having requested a competency hearing for Dooley. Supplemental Appendix at 10.

This court is bound by these findings of facts. 28 U.S.C. § 2254(d). In light of these findings, we conclude, as did Judge Walker of the Pennsylvania court, that Campbell's failure to raise the competency issue prior to the entry of Dooley's guilty plea had a reasonable basis, and Campbell's performance, therefore was not ineffective. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## III.

■ We also conclude that Dooley's claim that Campbell was ineffective for not having sought Ferguson's disqualification must fail. At the outset, we note that we need not determine whether a motion to disqualify Ferguson would have been successful.[3]

---

2. An ineffective assistance of counsel claim presents mixed questions of law and fact. *Strickland v. Washington*, 466 U.S. 688, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Thus, our review is plenary. The district court erred, therefore, in applying the 28 U.S.C. § 2254(d) presumption of correctness to the Pennsylvania

court's conclusion that Dooley's counsel was not ineffective.

3. We observe that Dooley has raised no due process claim before this court. Dooley, as previously discussed, raised only a Sixth Amendment claim of ineffective assistance of counsel. Although a due process claim might have argua-

Assuming that the motion had arguable merit, our inquiry is confined to questioning whether trial counsel's failure to raise the claim was reasonable.

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision not to investigate. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. *See also, Kimmelman v. Morrison,* — U.S. ——, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986).

## A.

In Dooley's second Pennsylvania P.C. H.A. case, Judge Walker, the state trial judge, held against Dooley on this claim because Dooley had failed to sustain his burden of demonstrating the unreasonableness of counsel's decision.

> It must be determined whether counsel [Campbell] had a reasonable basis for not raising the issue. This determination must be made even if Ferguson's disqualification would have been required. The defendant did not sustain his burden in regard to this issue. There is nothing in the record directed towards counsel's knowledge of the former representation, consideration of it, or decision in regard to it. Since there is no evidence of counsel's strategy in regard to the disqualification of Ferguson, the defendant failed to sustain his burden.

Supplemental Appendix at 13.

We agree. At the hearing on Dooley's second P.C.H.A. petition, Dooley, Ferguson, Campbell and Stein testified. Although the conflict of interest issue involving Ferguson was specifically recognized and identified, no evidence was sought or obtained from any witness which would establish the fact that Campbell knew, during the period of his representation of Doo-

ley, that Ferguson had previously represented Dooley on any charge, let alone on an arson charge.

Dooley, who testified at length, did not testify that he had told Campbell of Ferguson's prior representation or that Campbell had learned of it by any other means. Ferguson testified that he had represented Dooley in 1974 and that he was the district attorney in 1977 when Dooley was charged again. Ferguson was asked "Did you ever consider it to be any type of a conflict to have represented him [Dooley] in one capacity as defense attorney and another capacity as a prosecuting attorney a few years later?" Ferguson responded, "No, sir.... I hadn't seen John [Dooley] in some time, I don't know how long, Dan, but I hadn't seen him. I don't believe I had seen him since the time of the trial in '74, and we were what, about three years later? If I saw him, it was only casually, and I don't even remember seeing him then." Appendix at 209–210.

Campbell also testified, but his testimony, as with the testimony of other witnesses, centered almost exclusively on the issue of Dooley's competence. Indeed, a fair characterization of the evidentiary hearing as a whole is that the prime and central issue raised was Dooley's competency to plead guilty. It was for that reason that the testimony of Dr. Stolar, a psychiatrist, and the various psychological evaluations of Dooley were produced.

Significantly, no allegation that Campbell knew of Ferguson's earlier representation appears in Dooley's habeas petition as supplemented and amended by his state court P.C.H.A. brief. Thus, it is not surprising that the record developed at the Pennsylvania P.C.H.A. evidentiary hearing is devoid of any claim that Campbell knew or should have known of Ferguson's earlier representation.

 A trial counsel cannot be ineffective for failing to raise claims as to which

---

ble merit, *see, e.g., United States v. Schell,* 775 F.2d 559 (4th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1498, 89 L.Ed.2d 899 (1986); *Zuck v. Alabama,* 588 F.2d 436 (5th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42

(1979); *Branan v. State,* 161 Ind.App. 443, 316 N.E.2d 406 (1974), such a claim has not been raised in the Pennsylvania courts, and therefore remains unexhausted.

his client has neglected to supply the essential underlying facts when those facts are within the client's possession; clairvoyance is not required of effective trial counsel. *See Jackson v. Scully*, 781 F.2d 291 (2d Cir. 1986) (petitioner not denied effective assistance when trial counsel failed to object to alleged fourth amendment violation where failure to object resulted not from counsel's unfamiliarity with fourth amendment doctrine, but instead from petitioner's failure to inform counsel of the circumstances surrounding the allegedly improper arrest). Indeed, even at this stage, Dooley has yet to claim that Campbell knew of Ferguson's prior representation. Moreover, Dooley's brief provides no particularization of the material facts which Dooley now claims must be developed in a federal court evidentiary hearing. Nevertheless, Dooley requests a remand with continued appointment of counsel[4] so that the district court can conduct such a hearing and develop "some" facts which would support Dooley's "ineffective assistance/disqualification" claim.

### B.

Dooley's petition, as it pertains to the disqualification issue, presents still another obstacle which Dooley has failed to surmount. Dooley has never claimed, nor has he ever testified, that he would have refused to plead guilty if Campbell had moved Ferguson's disqualification and Ferguson had in fact been disqualified.

In *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985), petitioner Hill filed a habeas corpus petition alleging ineffective assistance of counsel in connection with his decision to plead guilty to murder and theft charges before an Arkansas trial court. Hill claimed that his guilty plea was involuntary because his attorney misinformed him as to the parole eligibility date that would result from his plea agreement. Hill's counsel had apparently informed him that he would be eligible for parole after having served one-third of the recommended prison sentence. However, this information was erroneous because Hill had had a previous felony conviction, and under the applicable state law, second offenders were required to serve one-half of their sentences before becoming eligible for parole.

The district court dismissed Hill's petition without holding an evidentiary hearing, and the Supreme Court affirmed this judgment. The Court held that Hill had "failed to allege the kind of prejudice from the allegedly incompetent advice of counsel that would have entitled him to a hearing." 106 S.Ct. at 368. The court noted that Hill had failed to allege that he would *not* have pled guilty, had he been correctly informed about his parole eligibility date. 106 S.Ct. at 371. Moreover, Justice Stevens, in his concurring opinion, pointed out that Hill was not entitled to an evidentiary hearing because his petition had not even alleged that his counsel *had knowledge of Hill's prior conviction*. 106 S.Ct. at 372. "Without an allegation that the attorney knew of petitioner's prior conviction, but failed to inform him of the applicability of the Arkansas "second offender" statute, there is no reason to provide petitioner with an evidentiary hearing on his claims of ineffective assistance of counsel." 106 S.Ct. at 372.

It is abundantly clear that Dooley's habeas petition suffers from the same deficiency that led the Supreme Court to affirm the dismissal of Hill's habeas petition in *Hill v. Lockhart*. Just as Hill had failed to inform his counsel of his earlier felony convictions, so in this case did Dooley fail to inform Campbell of Ferguson's prior representation. Similarly, just as Hill had failed to allege that he would not have pled guilty

---

**4.** Dooley contends that the district court abused its discretion in failing to appoint counsel to represent him. *In light of our holding that no* evidentiary hearing was required, we conclude that, even if such an abuse of discretion had occurred, the error was harmless. Despite any difficulties Dooley may have had in preparing his habeas petition, Dooley has not suffered any prejudice because he submitted to the district court the very state court brief, prepared by Attorney Mason, which formed the basis of his second P.C.H.A. hearing. The submission of that brief insured that the district court had a full and fair presentation of the issues raised in the state court, and therefore, of those issues that were properly before it.

had he known about his correct parole eligibility date, so too has Dooley failed to allege that he would not have entered a plea of guilty had Ferguson been disqualified.

Moreover, it is evident that the deficiencies in Dooley's case go well beyond the failings of the petition itself. Dooley makes no claim that the two-day state court hearing was anything but a full and thorough hearing which afforded him every opportunity to present those proofs required to sustain his petition. Yet throughout the state court proceedings in which Campbell's alleged ineffectiveness for failing to seek Ferguson's disqualification was at issue—proceedings at which both Campbell and Dooley himself were called to testify—no witness had ever asserted that Campbell had knowledge of Ferguson's prior representation of Dooley. Nor, as we have observed, did Dooley ever testify that Ferguson's disqualification would have affected his plea.[5]

Our independent and careful review of the entire evidentiary hearing conducted pursuant to Dooley's second P.C.H.A. petition satisfies us that it was the competency issue, to the virtual exclusion of all other claims, upon which Dooley rested his hopes for relief. As we have earlier observed, Dooley had every opportunity to establish and prove his identified "ineffective assistance/disqualification" claim, but he chose not to pursue it vigorously. Accordingly, this record does not support the claim that Campbell either knew that Ferguson had represented Dooley at an earlier time, or that Campbell's failure to move for Ferguson's disqualification played any role in Dooley's decision to plead guilty.[6] Thus, we are satisfied that the district court did

not err in failing to hold an evidentiary hearing on Dooley's "ineffective assistance/disqualification" claim.

## IV.

We will affirm the order of the district court denying Dooley's petition for habeas corpus relief.

GIBBONS, Chief Judge, dissenting:

I join in the grant of Dooley's motion to delete his double jeopardy claim before this court. I also join in Part II of the opinion of the court, which holds that Dooley's counsel was not ineffective for failing to request an evidentiary hearing on the question of Dooley's competence to stand trial or to plead guilty.

I disagree, however, that on this record it is clear that Dooley's attorney Campbell was not ineffective for failing to request that Ferguson be disqualified as the prosecutor against Dooley. In 1974, Ferguson, an assistant public defender, represented Dooley on an arson charge. There is no question that that fire is distinct from the ones Dooley pled guilty to in 1977. During the course of the 1974 trial, however, the district attorney attempted to introduce evidence to show that Dooley was a suspect in other fires for which he was not charged, namely the Floch and Dunn fires. After a jury trial, Dooley was found not guilty. Although Ferguson has testified that he did not discuss these other fires with him, Dooley insists otherwise. In 1977, Dooley was again charged with arson and during two interviews conducted by then District Attorney Ferguson made several incriminating statements about other fires, including the Floch and Dunn fires. Based on those

---

5. We cannot help but observe that Dooley's "ineffective assistance/disqualification" claim has surfaced for the first time in Dooley's *second* attempt to seek post-conviction relief and appears to be purely incidental to Dooley's main claim that Campbell should have raised the issue of his competency to plead guilty. We note that in Dooley's first P.C.H.A. hearing, Dooley was represented by Attorney Lindquist, a new and different counsel. At that time, his only objections to his plea entry were that there had been a secret agreement that he would be sentenced to Warren State Hospital for five years

and that he had been unlawfully induced to make inculpatory statements in exchange for additional visitation and telephone rights. No claims regarding either Campbell's effectiveness or Ferguson's conflict of interest were raised at that time or at any prior time.

6. At no time has Dooley ever challenged or argued for the suppression of the statements he made to Ferguson during the interviews of July 22 and July 26, 1977.

interviews, Dooley was charged with six additional counts of arson.

Our first inquiry is whether Campbell's failure to request Ferguson's disqualification was reasonable under the circumstances. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Clearly, during his prior representation of Dooley, Ferguson "might have acquired" information about the exact fires that were the subject of the prosecution in which Ferguson participated as District Attorney. *See Realco Services, Inc. v. Holt*, 479 F.Supp. 867, 871 (E.D.Pa.1979) (explaining *American Roller Co. v. Budinger*, 513 F.2d 982, 984 (3d Cir.1975)). We need not resolve the dispute as to whether Dooley and Ferguson discussed the Floch and Dunn fires in 1974 because surely "they ought to have talked about" or it "would not have been unusual" for Ferguson to talk to Dooley about such possible incriminating evidence of other crimes. *See Realco Services, Inc. v. Holt*, 479 F.Supp. at 871–72. Moreover, we need not find that Ferguson actually used Dooley's confidence to his disadvantage. As we stated in *Budinger*, an attorney should disqualify himself if there " 'may be the appearance of a possible violation of confidences' even though this may not be true in fact." *American Roller Co. v. Budinger*, 513 F.2d at 984 (quoting ABA Comm. on Ethics and Professional Responsibility, Informal Op. 885 (1965)).

Thus, because Ferguson under these circumstances should have recused himself in Dooley's prosecution, it would have been reasonable for Campbell to request that Ferguson be disqualified if Campbell knew or should have known of Ferguson's prior representation of Dooley. The record, however, is unclear as to whether Campbell knew that Ferguson had once represented Dooley and whether Campbell knew that the evidentiary question in Dooley's 1974 trial involved the Floch and Dunn fires.

The question of whether Campbell knew of Ferguson's prior representation of Dooley is crucial to the issue of Campbell's ineffectiveness and should be fully argued, not presumed. Although the majority

claims that because this factual issue was never discussed, the record is devoid of a claim that Campbell knew, we can just as easily conclude that the record is devoid of any proof that Campbell did not know. The fact remains too that Dooley never had an evidentiary hearing in the district court to present properly such a claim.

Equally disturbing, however, is the majority finding it significant that Dooley did not make any allegation in his habeas corpus petition that Campbell knew of Ferguson's earlier representation. Dooley filed a *pro se* motion in the district court for appointment of counsel to assist him in preparing his habeas corpus petition, but that motion was denied on February 27, 1986. This denial was made despite the fact that it was clear that Dooley had difficulty filing and articulating his claims. The district court on January 22, 1986 by Memorandum Order had directed Dooley to amend his petition by specifying and particularizing his general allegations of "ineffective counsel and double jeopardy." On March 10, 1986 Dooley, proceeding *pro se*, filed his amended petition containing the same conclusory claims but attached some 53 pages of documents which had been submitted to the state courts in the P.C. H.A. process and the following handwritten letter:

Dear Sir:

I am sening [sic] you the amentment [sic] you ask me to make on my petitton [sic] + a copy of the Judge order from lower court for you can see what I am telling you is true + also a copy of the nut doctor retort [sic] on me.

Thank you

s/ John Dooley P3111

Whatever injustice was done by the district court's denial of appointment of counsel at that juncture is compounded today by the majority's faulting Dooley for his poor performance as a *pro se* litigant.

The majority holds that because the record is devoid of any evidence with respect to whether Campbell knew that Ferguson had been Dooley's attorney on a previous arson charge, no federal evidentiary hearing was required. This is a curious

conclusion in light of the majority's recognition that, at no point during the hearing on Dooley's second P.C.H.A. petition, was evidence sought regarding what Campbell knew about Ferguson's prior representation of Dooley. Indeed, the majority states that "a fair characterization of the evidentiary hearing [at the state court level] as a whole is that the prime and central issue raised was Dooley's competency to plead guilty." *See* Maj. op. at 890.

Such a characterization compels the determination that a federal evidentiary hearing should have been held. The Supreme Court in *Townsend v. Sain* set forth the standards to determine when an evidentiary hearing in a habeas corpus case is necessary:

> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words, a federal evidentiary hearing is required unless the state court trier of fact has, after a full hearing, reliably found the relevant facts.

*Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963) (footnote omitted). The *Townsend* Court further explained:

> A federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* at 313, 83 S.Ct. at 757. The majority completely ignores the *Townsend* standards in its discussion. Obviously, a full and fair evidentiary hearing in the state court on the issue of Ferguson's disqualification was not conducted. In fact, most of the circumstances held by the *Townsend* Court as mandating a federal evidentiary hearing are present in the instant case: 1) the merits of the factual dispute were not resolved in the state hearing; 2) the state factual determination is not fairly supported by the record as a whole; 3) the material facts were not adequately developed at the state court hearing; and 4) the trier of fact did not afford the habeas applicant a full and fair fact hearing. Therefore, on the basis of the state court record, I would hold that the district court erred in not conducting an evidentiary hearing on this issue.

Lastly, the majority concludes that because Dooley did not claim that he would have refused to plead guilty if Ferguson had been asked to disqualify himself and had in fact done so, he has failed to meet the prejudice component of *Strickland.* On appeal, Dooley specifically claims, however, that had Ferguson been disqualified "certain incriminating statements as well as Dooley's waiver of counsel [at the interviews] may not have occurred" (Dooley's Brief at 23), thereby raising a reasonable probability that the result of the proceeding would have been different. This plainly meets the prejudice prong of *Strickland. See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The majority's reliance in this case on *Hill v. Lockhart* with respect to the prejudice requirement of *Strickland* is misplaced. The majority seems to imply that *Hill* stands for the proposition that in order to trigger the need for an evidentiary hearing, prejudice could only have been shown if Dooley had claimed that he would not have pled guilty. *Hill v. Lockhart,* however, involved a habeas corpus petition which challenged a guilty plea based on ineffective assistance of counsel. *See* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Specifically, the *Hill* petitioner claimed that his guilty plea was involuntary because his attorney had misinformed

him about his correct parole eligibility date. Thus, because the guilty plea itself was at issue, the Supreme Court held that Hill, in not claiming that he would not have pled guilty if he had been properly advised by counsel, had failed to allege the sort of prejudice entitling him to an evidentiary hearing on the issue of effectiveness of counsel. *See id.* 106 S.Ct. at 370. *Hill v. Lockhart* does not hold, however, that in all ineffective assistance of counsel cases the petitioner, in order to demonstrate prejudice, must claim that he would not have pled guilty but for his counsel's ineffectiveness.

Similarly, the majority's further reliance on Justice White's concurrence in *Hill* is equally misplaced, as the position espoused there is certainly not controlling. Justice White would have upheld the judgment on a different ground than the *Hill* majority, namely the petitioner's failure to inform his counsel of his earlier convictions in view of the fact that the petitioner had signed a plea statement containing a space for prior convictions which had been filled in with a "O." *See id.* at 371–72 (White, J., concurring). Justice White's position obviously turns on the peculiar facts of the *Hill* case—the fact that the petitioner there apparently affirmatively represented to his attorney that he had no prior convictions. Although the majority in the instant appeal concludes, incredibly in my opinion, that Dooley's habeas corpus petition suffers from the same deficiency as Hill's because Dooley "fail[ed] to inform Campbell of Ferguson's prior representation" (*see* maj. op. at 891), the record does not contain such a factual finding nor does it support such a finding. Based on the record, we do not know what Dooley did or did not tell Campbell. This is merely further support for the need of an evidentiary hearing in this case.

Because the state court did not adequately develop the factual issue of whether Campbell knew or should have known of Ferguson's prior representation of Dooley, I would remand in order that an evidentiary hearing to resolve that question be held.