Robert MONACHELLI

v.

WARDEN, SCI GRATERFORD and the Attorney General of the Commonwealth of Pennsylvania and the District Attorney of Bucks County, Appellants.

No. 89–1127.

United States Court of Appeals,
Third Circuit.

Argued June 28, 1989.

Decided Sept. 11, 1989.

Steven Harris (argued), C. Theodore Fritsch, Jr., Office of Dist. Atty., Doylestown, Pa., for appellants.

Peter Goldberger, Pamela A. Wilk (argued), Philadelphia, Pa., for appellee.

Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This is an appeal by the Warden, SCI Graterford, et al. (the "government") from the order of the district court granting the petitioner Robert Monachelli ("petitioner" or "Robert") a writ of habeas corpus. The district court had jurisdiction pursuant to 28 U.S.C. § 2254(a). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

### I. BACKGROUND

The petitioner and his brother, Vincent Monachelli, were tried jointly and both convicted in the Court of Common Pleas of the Commonwealth of Pennsylvania of first degree murder. 18 Pa.Cons.Stat. § 2502. Specifically, the petitioner was held criminally liable for the intentional killing of Gregory Warmkessel, a deaf mute, with whom he had had a disagreement.[1] It is from this conviction and sentence that petitioner sought a writ of habeas corpus from the district court.

1. The petitioner was also tried but found not guilty of criminal conspiracy to commit the murder of Gregory Warmkessel.

2. Petitioner also urged that his counsel was ineffective in failing to "investigate [the] Commonwealth's evidence concerning tire tracks." On the authority of *Dooley v. Petsock,* 816 F.2d 885,

The district court granted Robert Monachelli's petition for a writ of habeas corpus. It found that petitioner's murder trial was conducted in such a way as to deny him his sixth amendment right to confrontation. It determined that the state trial court had improperly admitted into evidence, through the testimony of Fred Ludlow, certain statements made by Vincent Monachelli which had a prejudicial impact on Robert Monachelli. The district court further determined that the other evidence introduced against Robert Monachelli was not so "overwhelming" as to render the error harmless.

In deciding this appeal by the government we may only set aside the findings of fact of the district court if they are clearly erroneous. *Sullivan v. Cuyler,* 723 F.2d 1077, 1082 (3d Cir.1983). Also, where we are called on to interpret or apply legal precepts our review is plenary. *Id.*

### II. DISCUSSION

Before the district court, the petitioner's claim for a writ of habeas corpus was premised on two alternative grounds: (1) the admission of his co-defendant's testimony, through Fred Ludlow, violated his sixth amendment right to confront adverse witnesses; and (2) petitioner's trial counsel was ineffective. As to petitioner's second ground, he claimed that his counsel was ineffective in that (1) he failed to object to the consolidation of the trials of petitioner and his brother; (2) he failed to seek redaction of Fred Ludlow's testimony; and (3) he failed to request a jury instruction on intoxication.[2] The government argues that neither of the grounds asserted by petitioner provides a basis upon which to grant petitioner a writ of habeas corpus. The petitioner continues to assert both grounds

888 n. 1 (3d Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 182, 98 L.Ed.2d 135 (1987), the district court allowed the petitioner to withdraw this unexhausted contention. The district court therefore did not consider this as a basis for relief.

in seeking an affirmance of the district court's order.[3]

## A. *CONFRONTATION CLAUSE*

The sixth amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him." This right to confront adverse witnesses is applicable to the States via the fourteenth amendment to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The "right to confront and cross-examine witnesses is primarily a functional right that promotes reliability in criminal trials," *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), in that it

> (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross examination, the greatest legal engine ever invented for the discovery of truth; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* 476 U.S. at 540, 106 S.Ct. at 2062 (citation omitted).

At the joint trial of Vincent and Robert Monachelli neither defendant took the witness stand. The Confrontation Clause problem to be addressed in this case is whether certain statements of Vincent Monachelli, made to Fred Ludlow, were improperly admitted through the testimony of Fred Ludlow in violation of the rights of petitioner Robert Monachelli. We will first consider the propriety of admitting the statements.

1. *Error*

■ At the criminal jury trial in the Court of Common Pleas Fred Ludlow testified for the prosecution that in the early morning hours of September 15, 1982 both Robert and Vincent Monachelli visited him at his house. Ludlow further stated that he had a conversation with Vincent Monachelli at that time. After eliciting this testimony, the prosecutor asked Ludlow to detail the substance of Ludlow's conversation with Vincent. Counsel for Robert Monachelli objected. The trial judge overruled the objection but cautioned the jury not to consider what Ludlow was about to say against Robert unless it found that a conspiracy existed between Robert and Vincent. Ludlow then testified that Vincent told him that Vincent and Robert were looking for the person with whom Robert had had a fight in a bar and that Robert was "packing a gun." The record does not reveal Robert's whereabouts at the time of this conversation.

Gregory Warmkessel was murdered in the early morning hours of September 16, 1982. Ludlow testified that on the night of September 17, 1982, Vincent Monachelli returned to Ludlow's house. The prosecutor asked Ludlow if he had a conversation with Vincent on September 17, 1982 and asked Ludlow to recount that conversation. Counsel for Robert Monachelli objected. The trial judge overruled the objection but cautioned the jury that Vincent's statements to Ludlow on September 17, 1982, having been made after the conclusion of any conspiracy which the jury might determine existed between Vincent and Robert, were admissible against Vincent only.

These questions and answers before the jury followed:

> Q: Mr. Ludlow, what conversation did you have with Vincent Monachelli on this date?

---

**3.** We find that the petitioner has exhausted his state remedies in that each of his claims was fairly presented to the state courts. The Supreme Court's opinion in *Castille v. Peoples*, — U.S. —, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989), is not to the contrary. *Castille v. Peoples* stands for the limited proposition that "submission of a new claim to the State's highest court

for discretionary review" does not constitute fair presentation. *Id.* 109 S.Ct. at 1060. In this case, by contrast, not only did petitioner seek discretionary review from the State Supreme Court but each of the grounds asserted by the petitioner was raised before and addressed by the Pennsylvania Superior Court on non-discretionary review.

A: Well, he first came to the house and he told me he was there the night before. My wife and I were having domestic problems and I didn't see him.

He kept on talking about that for about an hour. And later on that evening, he told me—well, first he asked me—he said "Can I trust you not to say anything?" I said sure. I wasn't really in the mood to have any company that night. And he told me—he says "My brother was just arrested for murder"—and he rattled on about that for a while. And later on, we were sitting at the kitchen table talking and he was telling me more or less what happened, and he reached over the table when he was telling me—or he reached over the table and he pointed his finger at my head and he went like this (indicating).

Q: Who did that?

A: Vince.

Q: Did he say anything else when he did that?

A: He just said that—you know, he was explaining to me more or less how it happened. He said he shot him like twice like this (indicating). That was the first time. And a little later on during that, ten-fifteen minutes later, he was standing up at that time. He stood up and pointed down to the ground.

Q: Could you stand up and demonstrate?

A: He pointed like this here (demonstrating)—like firing a gun or something like that—you know—he was explaining to me what happened. He said, you know, "—put two bullets in him like that."

\*   \*   \*   \*   \*   \*

Q: How many times did Vincent Monachelli illustrate to you pointing his finger as a gun?

A: Twice.

Q: One time was to your head (indicating)?

A: Yes.

Q: The other time to the ground (indicating).

A: Right.

On cross-examination, counsel for Vincent Monachelli asked Ludlow, "when he [Vincent] was describing the shooting who was he talking about." To which Ludlow responded: "He didn't mention no name, he just kept saying 'he.'" Vincent's counsel then asked "He [Vincent] didn't say I shot the guy, did he?" to which Ludlow responded: "No."[4] Finally, counsel for Vincent asked Ludlow: "When Vincent was at your house Friday night: Friday, the day before he turned himself in, isn't it true he basically said 'I had nothing to do with this,' when he was describing what happened with Bobby?" Ludlow responded: "He said that [statement that] night or the next morning, because he asked me what I thought he should do; and I said well, you know, if he didn't have anything to do with it 'The best thing to do is to turn yourself in.'"

In his petition for a writ of habeas corpus before the district court, petitioner claimed that the admission of Ludlow's testimony, notwithstanding the trial judge's limiting instructions, violated his sixth amendment right to confrontation. The district court agreed with petitioner relying on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *United States v. Ruff,* 717 F.2d 855 (3d Cir.1983), *cert. denied,* 464 U.S. 1051, 104 S.Ct. 733, 79 L.Ed.2d 192 (1984).

In its brief before this court, the government argues that Ludlow's testimony did

**4.** At oral argument the government contended that Vincent's conversation with Ludlow on September 17, 1982 does not conclusively implicate Robert. The government argued that Ludlow's testimony is ambiguous as to whether Vincent was describing the manner in which he had killed Warmkessel or was describing the manner in which his brother, Robert, shot Warmkessel. Thus, the government asserted, this Court should find that Vincent did not refer to Robert and that *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is therefore inapplicable. In reading Ludlow's testimony as a whole, including the portion of the cross-examination quoted above in text, we find the government's position meritless. Any ambiguity which may have existed in Ludlow's direct testimony as to who Vincent was referring, was amply clarified during the cross-examination of Ludlow.

not violate petitioner's sixth amendment rights because (1) the trial judge gave the jury an instruction limiting the testimony's admissibility; and (2) Vincent's conversation with Ludlow was in a non-custodial setting thereby not implicating *Bruton.* At oral argument the government really abandoned these arguments. In any event, we find these arguments unpersuasive. In *Bruton* the Supreme Court held that where the non-testifying defendant's extrajudicial statements are both inadmissible as substantive evidence against the other defendant and tend to implicate the other defendant, their admission violates the other's sixth amendment right to confrontation. As the Court noted in *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972), the *Bruton* Court further found that the danger of misuse of the confession by the jury was so great that admission of the co-defendant's confession was error, "Even when the jury is instructed to consider the confession only against the declarant, ...." Additionally, our court held in *Ruff* that the *Bruton* rule is applicable where the statements of the non-testifying co-defendant were made in a non-custodial setting to family and friends.

Accordingly, we hold that the district court was correct insofar as it concluded that Vincent's out-of-court statements on September 17, 1982, in the joint trial of Vincent with petitioner, were admitted in violation of petitioner's sixth amendment right to confrontation.

### 2. Harmless Error

■ It is now well established that not every *Bruton* violation will lead to a reversal of a criminal conviction. *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972). Instead, a *Bruton* violation will not result in a reversal where the independent, "properly admitted evidence of [the defendant's] guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Id.* 405 U.S. at 430, 92 S.Ct. at 1059. The burden of proof that an error is harmless

rests squarely on the government. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The government argues that Ludlow's testimony was "wholly unnecessary" to the conviction of the petitioner in light of the ear-witness identification of petitioner at the scene of the crime and the voluminous circumstantial evidence linking the petitioner with the crime. The district court disagreed with the government and found that the government failed to carry its burden of proving that Ludlow's testimony was harmless beyond a reasonable doubt. This court must now engage in a *de novo* examination of the untainted evidence to determine if, as a matter of law, it is so overwhelming to permit it to conclude that the admission of the testimony of Ludlow as to what Vincent told him on September 17, 1982 was harmless.

During the state trial the government called in excess of twenty-five witnesses. It established that the petitioner and the victim had an argument in a bar during the evening of September 14, 1982. As a result of that argument the petitioner called the police, who came to the scene. A police officer told the petitioner that he should file charges against the victim in the morning, to which the petitioner was said by the testifying officer to have responded: "You can check my record. I've never done anything, but do you want me to go home and get a gun and shoot him." A police officer also testified that he took petitioner's comment to be an idle threat.

The government also introduced evidence detailing the following sequence of events preceding the killing of Warmkessel: (1) on the day of the killing, petitioner went to take target practice with a .22 caliber gun; (2) on the evening of September 15, 1982 (a) the petitioner and Vincent went looking for Warmkessel; (b) the petitioner was seen several hours before the murder with a gun in his belt; (c) the petitioner told his friend Robert Medycki that he was going to shoot Warmkessel if he saw him; (d) the petitioner was seen waiting for his brother outside Leary's Tavern in which Vincent and the victim were drinking together; and

(e) the victim was last seen alive leaving Leary's Tavern with Vincent.

The government further introduced evidence that the victim was killed by .22 caliber bullets. In addition the government introduced tire track evidence which it contended showed that the petitioner's father's car was at the scene of the murder. A review of the trial record, however, reveals that the government was never able to show conclusively that the car was at the scene. The government also elicited testimony that the petitioner and his brother cleaned and washed the car on September 17, 1982.

All of the above testimony is circumstantial evidence of the petitioner's motive to kill, and his participation in the killing of Warmkessel. In fact, the only direct testimony placing petitioner at the scene of the crime was that of Annemarie Shedaker. Shedaker testified that on the evening of the killing she heard, from her bedroom window, two gun shots. She further testified that she heard three voices on that evening. One she conclusively identified as Warmkessel. As to the identity of the other two voices the following colloquy took place on direct examination:

Q: Miss Shedaker, do you know whose voices you heard that evening?

A: That evening, no, I don't [sic] know whose voices it was at the time.

Q: Do you now know whose voices you heard on that evening?

\* \* \* \* \* \*

A: Yes, I do.... It was the voices of Bobby and Vince Monachelli.

On cross-examination, it was established that at the time that Shedaker heard the gunshots and the voices she was smoking marijuana. Defense counsel also asked: "Isn't it true at that time you said that if you had gone to Connecticut say the next day or thereafter, you would never have figured out who or what the noises or voices were?" Shedaker responded: "If I heard nothing around—if nobody told me, yes."

In light of the cross-examination of Shedaker, it is possible to conclude that the jury may have accorded her testimony little weight. Removing that evidence as well as the improper statements made by Vincent Monachelli on September 17, 1982, we are left with a web of circumstantial evidence providing a motive and perhaps a plan to kill Warmkessel but nothing directly placing petitioner at the scene of the killing.

We conclude that such evidence is not so overwhelming to render the admission of Vincent's statements harmless. Supreme Court precedent does not dictate a contrary conclusion. In *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), each of the defendant's three co-defendants confessed. Each of the confessions was admitted at the joint trial but only one of the three confessing defendants testified at the trial. The Supreme Court held that the admission of the non-testifying co-defendants' confessions was a harmless error. The Court noted that the defendant as well as his testifying co-defendant placed him at the scene of the crime with a gun. The Court stated that it was not the non-testifying co-defendants who "put a gun in his [the defendant's] hand when he denied it." *Id.* at 253, 89 S.Ct. at 1728. The Court then concluded that the evidence supplied through the non-testifying defendants confessions was merely cumulative. *Id.* at 254, 89 S.Ct. at 1728. In passing the Court took notice of the fact that "the case against [the defendant] was not woven from circumstantial evidence." *Id.* at 254, 89 S.Ct. at 1729.

*Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), is in the same vein. There the Supreme Court found that portions of each of the two petitioners' confessions which implicated the other, although erroneously admitted, were harmless. The Court concluded that "[t]he testimony erroneously admitted was merely cumulative." *Id.* at 231, 93 S.Ct. at 1570.

Finally, in *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the Court found that any violation of *Bru-*

*ton* which may have occurred was harmless. The Court found that the "petitioners confession was minutely detailed and completely consistent with the objective evidence." Moreover, the allegedly inadmissible statements "at most tended to corroborate certain details of petitioner's comprehensive confession." *Id.* at 427, 92 S.Ct. at 1056. *See also United States v. Ruff,* 717 F.2d 855 (3d Cir.1983) (harmless error to admit confession of non-testifying co-defendant where (1) defendant himself confessed to the crime; (2) defendant was present when co-defendant detailed the commission of the crime to a third party and defendant did not deny his participation; and (3) there was circumstantial evidence linking defendant with the crime).

We can in no way view Vincent's statements on September 17, 1982 as "merely cumulative." Vincent's statements were the most devastating evidence of petitioner's guilt presented to the jury.

Moreover, we cannot say with assurance that Vincent's statements did not contribute to the guilty verdict. Not only were the statements the only evidence putting the murder weapon in petitioner's hand but they provided the jury with a graphic description of the execution-style commission of the killing. Such testimony by its very nature raises the passions of an ordinary person and therefore is likely to effect the jurors' ultimate resolution of the question before them.

Accordingly, we conclude that the properly admitted evidence in this case was not so overwhelming, nor was the prejudicial effect of Vincent's statements so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper admission of Vincent's statements was a harmless error.[5]

## III. CONCLUSION

Based on the foregoing, we will affirm the order of the district court conditionally

granting Robert Monachelli's petition for a writ of habeas corpus.

---

5. Because we will affirm the district court's order on confrontation clause grounds, we need not address the alternate argument proffered by petitioner; i.e., that his trial counsel was ineffective.