**Fathiree Uddin ALI, Petitioner–Appellant,**

v.

**Gerald HOFBAUER, Respondent–Appellee.**

No. 99–1875.

United States Court of Appeals, Sixth Circuit.

May 17, 2001.

Before KRUPANSKY, BOGGS, and BATCHELDER, Circuit Judges.

KRUPANSKY, Circuit Judge.

Petitioner–Appellant Fathiree Uddin Ali ("Ali") has challenged his Michigan state imprisonment pursuant to 28 U.S.C. § 2254. He has alleged, *inter alia*, that his involuntary confession coupled with ineffective assistance of his trial counsel has deprived him of his constitutional rights to a fair trial.

Jessie Hilton ("Hilton") and Kevin Campbell ("Campbell") recruited Ali into their scheme to rob Carl Gow ("Gow"), Hilton's former housemate. Hilton wanted revenge against Gow for evicting Hilton from the Gow residence. On March 24, 1989, Ali, Hilton, and Campbell committed the robbery and murdered the three inhabitants within Gow's home. On March 26, 1989, Gow's mother discovered the lifeless remains of Gow, Theresa Navarrette, and Jeffrey Harper. The Michigan Court of Appeals described the gruesome scene:

> All three bodies were found in the living room of Gow's house. All three had been bound with electrical cord. Navarrette, Gow, and Harper all suffered from severe head injuries caused by a blunt force object. Gow and Harper also suffered from multiple stab wounds. The police found a claw hammer, butcher knife, power drill, axe. and screwdriver which all had blood on them. There was blood spattered on the walls and ceiling of the living room and there was so much blood that it had seeped through the living room floor to the basement.

*Ali v. Hofbauer*, No. 89–004251, slip op. at 1 (Mich.Ct.App. Jan. 30, 1995).

After police investigation, Hilton, Campbell, and Ali were arrested. Hilton and Campbell quickly confessed to being involved in the robbery and the murders,[1] implicating Ali as well. Following Ali's initial arrest on March 27th, he denied any involvement in the crime; instead, he identified four individuals as alibi witnesses attesting to his whereabouts on March 24th: his wife. Tracy Johnson, Marlene Mills, and Brian Morgan. Later that day, in a second statement, Ali related the circumstances of a pre-March 24, 1989 altercation between him and Hilton, which Ali claimed was the last occasion upon which he had seen Hilton. The authorities then released Ali. At 11:15 P.M. that same evening, March 27, 1989, he was rearrested on a murder charge. He was again questioned about the events of March 24th. Officer William Rice testified that Ali made an oral statement[2] at 3:30 A.M., but refused to sign any written account of what he had said. Officers returned Ali to the interrogation room at 7:30 A.M. the following day and commenced questioning him. Ali has asserted that, at this point. Officer Rice indicated that he would arrest

---

1. Each defendant accused the other two of being more deeply involved in the murders.

2. Ali indicated that he was present at the scene of the robbery and murders, but refused to comment further.

Ali's wife and his four-year-old child and charge them with murder if he refused to confess. Later, on his way to the men's restroom, Ali saw his wife,[3] her sister, Marlene Mills, and Brian Morgan.[4] The officer escorting Ali refused to permit him to speak with his wife. When his interrogation resumed at approximately 8:30 P.M., he made further inquiries about his wife and was told that he would be informed of her status at a later time. Subsequently, Ali confessed to the robbery,[5] in a twenty-four page statement, but disclaimed any involvement in the related murders.[6] Before each interrogation, the police officers informed Ali of his *Miranda*[7] rights, and Ali signed written statements confirming that he had been so informed.

Before trial, the state trial court conducted a hearing on the admissibility of the various confessions made by the three defendants. Ali's trial counsel, Monsey Wilson ("Wilson"), argued that the police coerced Ali to confess by using several different investigators to interrogate him over an extended period of time. Wilson did not argue or produce evidence to the court that Ali's confession was caused by an unjustified detention of Ali's wife. On June 8, 1989, the state trial court refused to suppress the confession, ruling that Ali was aware of his rights and had not been coerced into confessing.

On October 20, 1989, the state trial court found Ali guilty of three counts of aiding and abetting felony murder. On November 1, 1989, Ali was sentenced to three concurrent life sentences. He timely filed a *pro se* appeal of his conviction to the Michigan Court of Appeals. He petitioned for remand to the lower court with instructions to conduct an evidentiary hearing to determine (1) if his confession to police was voluntary, given the detention of his wife; and (2) if his trial counsel had provided ineffective assistance. On February 27, 1991, the state court of appeals denied his request. Ali then retained counsel, who reinstituted the motion to remand. On May 21, 1993, the court of appeals denied the renewed motion to remand. On November 30, 1993, the Michigan Supreme Court denied Ali's interlocutory appeal from the court of appeals' denial of the motion to remand. On January 30, 1995, the court of appeals affirmed Ali's convictions and sentences. On January 29, 1996, the Michigan Supreme Court denied leave to appeal.

After exhausting his state court avenues of review, on January 21, 1997, Ali filed a petition for habeas relief in the Eastern District of Michigan. He alleged that seven instances of error infected the convictions: (1) the evidence of his participation in the March 24, 1989 robbery was insufficient to prove his vicarious guilt of felony murders committed by his accomplices; (2) the state prosecutor had denied him a fair trial by arguing in closing, without supporting evidence, that petitioner had per-

---

**3.** His wife had been detained at approximately 9 A.M. and interrogated. She claimed to have no knowledge of the robbery or murders. She was released soon after Ali saw her in the hall.

**4.** Of the four individuals, Ali perceived only Morgan to be manacled.

**5.** A stereo, a television set, and $400 in cash were stolen from the Gow residence on the night of the murders.

**6.** Ali indicated in his statement that he had sold the stereo to an anonymous buyer on the street. The next day, March 29th, Ali admitted he had lied in his previous statement about the whereabouts of the stereo taken from the Gow residence. He admitted that he had given the stereo to his brother to sell.

**7.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

sonally committed the three killings; (3) petitioner's statement to police should have been suppressed because it had been coerced by the unjustified arrest of his pregnant wife, and the state court of appeals denied him due process by refusing to remand to the trial court for an evidentiary hearing; (4) the trial court had denied him a fair trial, as well as his right to compulsory process to compel witness testimony, by allowing a person called as a defense witness to refuse to testify; (5) the trial court improperly instructed the jury regarding inferences to be drawn from the use of a weapon; (6) the court's instructions emphasized that he did not testify; (7) he had ineffective assistance of counsel at trial.

On July 22, 1998, the district court denied habeas relief on all theories except the voluntariness of Ali's confession and his charge asserting ineffective assistance of his trial counsel, and the district court ordered an evidentiary hearing as to these two claims, finding that Ali was "presumably"[8] without fault for the failure to develop a factual basis in the state court system for the two claims.[9]

On December 21, 1998, the district court conducted its previously ordered evidentiary hearing to resolve the issues of ineffective assistance of counsel and the voluntariness of Ali's confession. On July 1, 1999, the district court denied habeas relief, finding that Ali's confession was voluntary, and that his trial counsel had not been ineffective.

■ "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[10] *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To succeed, a claim of ineffective assistance of counsel must be supported by competent evidence which demonstrates that (1) the counsel

---

**8.** *Ali v. Hofbauer,* No. 97–70236, slip. op. at 27 (E.D.Mich. Jul. 22, 1998).

**9.** 28 U.S.C. § 2254(e)(2) provides:

If the applicant has *failed* to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2254(e)(2) (emphasis added). The district court's presumptive finding of diligence rested on Ali's claim that he had

informed his trial counsel about the interrogating officer's threat to arrest his wife and Ali's properly filed motions to remand in the state court system to develop a factual basis to support his two charges.

**10.** Because this reviewing court finds that Wilson did not provide ineffective representation to Ali, this court need not reach the involuntariness issue. *See* 28 U.S.C. § 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim [unless certain requirements are satisfied.]"); *Williams v. Taylor,* 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) ("Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."). Given the district court's finding that Ali did not inform his trial counsel of the essential facts underlying his involuntary confession claim, the failure to develop a factual basis in the state court system is directly traceable to Ali.

committed error(s) such that the representation fell below an objective standard of reasonableness; and (2) the error(s) prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. "With regard to the performance prong of the inquiry, ... [j]udicial scrutiny of performance is highly deferential, and '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Combs v. Coyle,* 205 F.3d 269, 278 (6th Cir.2000) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

▮ Wilson's performance did not fall below an objective standard of reasonableness because Wilson was not aware of any facts which would have suggested that the brief detention of Ali's wife caused him to confess. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information."); *Dooley v. Petsock,* 816 F.2d 885, 890–91 (3rd Cir.1987) ("A trial counsel cannot be ineffective for failing to raise claims as to which his client has neglected to supply the essential underlying facts when those facts are within the client's possession; clairvoyance is not required of effective trial counsel."). Although Ali testified that he told Wilson that the sight of his wife in police custody, coupled with the interrogating officer's statement that Ali's refusal to confess would result in her being charged with murder, compelled his involuntary confession, the district court, upon reviewing the evidence developed during its conducted hearing, elected to assign greater credibility to Wilson's testimony that Ali had not advised Wilson of Ali's version of his wife's brief detention and his compelled involuntary confession, and that Wilson was unaware of any other facts which would have suggested that Ali's wife's brief custody caused petitioner's involuntary confession:

> This Court is satisfied that petitioner cannot establish that he was denied the effective assistance of counsel to which he is entitled. This Court does not believe that petitioner ever communicated to attorney Wilson information that would lead a reasonable attorney to believe that his confession was "involuntarily" given. He may have mentioned to attorney Wilson something about his wife's "arrest"—but neither petitioner's testimony nor Wilson's testimony leads this Court to believe that Wilson had reason to believe that a basis for suppressing the confession existed.

*Ali v. Hofbauer,* No.97–70236, slip op. at 9–10 (E.D.Mich. Jul. 1, 1999) (citations omitted). As a result of its credibility findings, the district court concluded that Wilson's performance did not fall below any objective standard of reasonableness. Ali has not demonstrated that this credibility finding was without foundation. *See Gonzales v. Elo,* 233 F.3d 348, 357 (6th Cir.2000) ("[T]his court does not disturb [judgments based solely on] issues of credibility.").

The judgment of the district court is accordingly AFFIRMED.