**UNITED STATES of America ex rel. Walter Paul McGOUGH, Appellant,**

v.

**H. D. HEWITT, Superintendent, State Prison at Huntingdon, Appellee.**

**No. 75–1465.**

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1975.

Decided Dec. 18, 1975.

As Amended Feb. 2, 1976.

---

David Ferleger, Philadelphia, Pa., for appellant.

Bonnie Brigance Leadbetter, Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, F. Emmett Fitzpatrick, Dist. Atty., Bruce A. Franzel, Asst. Dist. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS, Circuit Judge, MARKEY,* Chief Judge of Court of Customs and Patent Appeals, and WEIS, Circuit Judge.

## OPINION OF THE COURT

JOSEPH F. WEIS, Circuit Judge.

Petitioner is a state prisoner who alleges a denial of due process because there was no evidentiary hearing to determine his competency before he pleaded guilty to certain charges and stood trial on others. We conclude that a psychiatric report submitted to the trial judge raised such substantial questions about petitioner's mental soundness that a hearing was required. Accordingly, we vacate and remand to the district court with instructions so that the state may conduct the necessary proceedings.

In March, 1971, petitioner McGough was indicted on various charges, including counts of assault with intent to kill, arson, and aggravated robbery, all arising from a particularly brutal incident in Philadelphia on December 23, 1970. When the case was first called for trial on April 7, 1971 in the state Court of Common Pleas, a competency examination was ordered *sua sponte*. On April 20, 1971, pursuant to this directive, two psychiatrists, Drs. Francis H. Hoffman and Alex von Schlichten, submitted an evaluation based on an interview with the petitioner and a review of file material from previous contacts. They stated

* Sitting by designation.

that the petitioner was not competent to stand trial at that time and recommended that he be committed for a period of observation and evaluation.

The court accepted this suggestion and ordered that McGough be committed for sixty days so that further studies could be completed. On July 12, 1971, Dr. Perry A. Berman submitted his report based on the sixty-day observation and opined that the petitioner was competent to stand trial. This evaluation confirmed the earlier diagnosis of Hoffman and von Schlichten that the petitioner suffered from minimal organic brain damage, chronic latent schizophrenia and sociopathic personality structure. Nonetheless, Dr. Berman stated that the petitioner was "currently competent to stand trial."

On September 20, 1971, the case was again called for trial. Defense counsel then advised the court that McGough would plead guilty to two charges and proceed to trial, non-jury, on the others. The presiding judge noted for the record that he had reviewed the psychiatric report of July 12, 1971. He questioned petitioner about his educational background and the medication that he had been receiving. The judge also inquired of defense counsel whether McGough had been able to cooperate, whether he had answered whatever had been asked, and if he had asked any questions. On receiving the lawyer's affirmative answers, the court interrogated the petitioner in the usual fashion to establish the voluntariness of his plea and a knowledgeable waiver of his right to a jury trial. The court made no explicit findings of competence on the record.

After hearing the evidence, the trial court found the defendant guilty and ordered the preparation of a presentence report. This report, which included another psychiatric evaluation, was reviewed at the sentencing hearing held in November, 1971. A prison term was imposed, with a recommendation that petitioner be confined to Farview State Hospital although the judge noted "[i]t does not appear at this very moment [McGough] has any kind of a psychiatric problem."

In 1973, McGough filed a petition under the Pennsylvania Post Conviction Hearing Act and the matter was assigned to another judge of the Common Pleas Court. At the post conviction hearing, counsel for petitioner introduced the psychiatric reports and called Dr. Robert Blumberg to testify. Dr. Blumberg said that, after a review of the records and his examination of the petitioner on April 3, 1973, he believed that McGough had not been competent to stand trial on September 20, 1971.

The hearing judge denied relief, finding "as a fact that the defendant was mentally competent to enter a guilty plea and stand trial on September 20, 1971." On appeal, the Superior Court of Pennsylvania affirmed without an opinion and the state Supreme Court denied allocatur.

Petitioner then filed this habeas corpus action in the district court. The district judge adopted the report of the United States Magistrate, finding that the fact of competency had been properly determined in the state post conviction proceedings and that no further hearing was required in the federal courts. The court thereupon denied the petition.

█ The conviction of a person while he is legally incompetent violates due process. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States v. Bishop*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); 4 W. Blackstone Commentaries 24 (9th ed. 1783).[1]

---

1. "[I]f a man in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried: For how can he make his defense?" 4 W. Blackstone Commentaries 1440 (Lewis ed. 1902).

*See also* Note: Incompetency to Stand Trial, 81 Harv.L.Rev. 454 (1967).

■ The test for competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Commonwealth ex rel. Hillberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967).[2]

The state court recognized and applied these principles. We do not differ on the substantive law but, rather, on the lack of procedural safeguards in the trial court.

The Pennsylvania Mental Health and Mental Retardation Act provides that a person charged with crime and detained in a penal institution may, on the order of the court, be examined by two or more physicians. Any one of these physicians may thereafter request the court to commit the accused to a facility for sixty days' further examination. 50 P.S. §§ 4408(b), (c). After consideration of a petition for a commitment and all evidence presented, the court may order that the accused be sent to a designated facility if he is found to be mentally disabled, § 4408(d). Petitioner does not contend that this procedural framework is unconstitutional but only that, in light of the facts of this case, due process required an evidentiary hearing before a

determination of competency was made. While a hearing is not mandatory under the statute, neither is it excluded, and its utilization is consistent with the general plan of the Act. We are thus confronted with the situation similar to that of *Drope v. Missouri, supra*, "[w]hen the corrective process is provided by the state but error, in relation to the federal question of constitutional violation, creeps into the record, we have the responsibility to review the state proceedings. *Hawk v. Olson*, 326 U.S. [271] at 276 [66 S.Ct. 116 at 119, 90 L.Ed. 61]." 420 U.S. at 175, 95 S.Ct. at 905.

■ We have reviewed the psychiatric report of July 12, 1971 which was read by the state trial judge[3] and find underlying it such substantial questions about petitioner's competency that an evidentiary hearing was required.

Since the report of Dr. Berman was prepared after a more comprehensive evaluation than was the initial one made by Drs. Hoffman and von Schlichten, it would be natural to give greater weight to the later one. Even so, Dr. Berman's report recited a history of McGough's commitment to the Farview State Hospital in 1967 as a result of bizarre activities at his home and a stay at the institution of two years followed by out-patient treatment. While the report is generally consistent with a finding of competency, there are portions which in-

---

2. In *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), petitioner had received a hearing on the issue of his competence to stand trial, but there did not appear to have been a hearing into his competence *to waive counsel*. The Supreme Court, in a somewhat ambiguous per curiam opinion, stated that the trial court had the duty of determining whether there was an intelligent and competent waiver of the right to representation by counsel. The case was remanded to the state to determine whether that duty had been fulfilled, and for consideration of *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In *Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973), the court interpreted *Westbrook* as implying that a higher standard of capacity was required to enter a plea of guilty than to stand trial. We have difficulty with that premise.

The *Dusky* standard for competence to stand trial requires that the accused have a rational and factual understanding of the proceeding. That level of competence would seem to apply to entering a plea as well as to standing trial. The trial court has the duty of determining the voluntariness of the plea and the defendant's understanding of its consequences. Interrogation by the judge is designed to provide an on-the-record demonstration that that obligation has been met. We do not think that a mental standard, different from that for trial competence, is required for a guilty plea.

3. The record does not establish whether the trial judge had seen the report of Drs. Hoffman and von Schlichten.

dicate the necessity for explanation and elaboration. For example:

> "His [McGough's] speech is coherent, and his thoughts usually progress in a goal oriented fashion. At times, however, he is totally irrelevant and talks about issues that are wasteful of a psychiatrist's time. At other times, he is evasive and circumstantial in his answers. His thought associations are not abnormal, but they have a tendency to roam.

> \* \* \* \* \* \*

> "This man has a combination of three psychiatric difficulties, which combined offer a poor prognosis from a treatment aspect. His characterologic structure is one of obsessive thinking and antisocial forms of behavior. This is combined with a degree of Organic Brain Syndrome that inhibits his ability to conceptualize.

> \* \* \* \* \* \*

> "He may experience some difficulty in cooperating with his lawyers, since he sometimes behaves negativistically, especially when stressed.

> \* \* \* \* \* \*

> "In summary, then, although it is inferred that the subject may have difficulty in undergoing trial procedures, the chances are better than 50% that he will be able to complete trial procedure without difficulties. It is on this basis that we recommend that it be instituted, recognizing that there are no methods known to us at this time that would increase his competency from a psychiatric standpoint."

We feel that these, and other comments, are substantial evidence that a hearing providing the opportunity to interrogate and cross-examine the psychiatrists was in order. *Drope v. Missouri,* *supra; Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

The factual finding of the post conviction hearing court that McGough was competent at the time of his plea and trial suffers from the same deficiency as that of the trial court. The only testimony taken was of a psychiatrist who examined the petitioner some two years after the event. The court's reluctance to accept an opinion based on that circumstance is understandable, but no effort was made to secure the testimony of the physicians who examined the petitioner shortly before trial in 1971. Consequently, the post conviction hearing finding was based solely on the reports submitted by those physicians, a procedure which is unacceptable in the circumstances here.[4]

We conclude, therefore, that the district court erred in accepting the factual findings of the state post conviction court, *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and the judgment must be vacated.

We come then to a consideration of appropriate relief. In *Pate v. Robinson, supra,* and *Drope v. Missouri, supra,* the Supreme Court said that a retrospective hearing in the state court to determine competency on the trial date would not be an adequate protection of the petitioner's due process rights. That this was not meant to be a per se rule, however, is clear from the opinion in *Drope v. Missouri, supra* at 183, 95 S.Ct. at 909:

> "Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances (citations), we cannot conclude that such a procedure would be adequate here. Cf. *Conner v. Wingo* [6 Cir.] 429 F.2d [630], 639–640."

*Conner v. Wingo,* 429 F.2d 630 (6th Cir. 1970), *cert. denied,* 406 U.S. 921, 92

---

4. In *Commonwealth v. Smith,* 227 Pa.Super. 355, 365, 324 A.2d 483, 488 (1974), an opinion handed down after the post conviction hearing in this case, the Superior Court of Pennsylvania said:

> "Inquiry is therefore wise whenever there arises from the evidence, no matter how presented to the trial judge, a reasonable doubt that the defendant is competent to stand trial."

We consider the Superior Court's position consistent with the result we reach here.

S.Ct. 1779, 32 L.Ed.2d 121 (1972), held that a new trial was not required when the findings at the post conviction hearing were based on evidence derived from knowledge contemporaneous to the trial. We think the same considerations apply here because this case is distinguishable from *Pate v. Robinson, supra*, and *Drope v. Missouri, supra*.

■ We were advised at oral argument that Dr. Berman is available to testify, and we take notice of the fact that the judge who presided at the trial in September, 1971 is presently an active member of the Common Pleas Court of Philadelphia. Therefore, on remand, in addition to evaluating testimony based on contemporaneous knowledge, the trial judge will be able to base his findings on his own impressions gathered from the petitioner's appearance and demeanor at the trial in September of 1971. *Cf. United States ex rel. Phelan v. Brierley*, 453 F.2d 73 (3d Cir. 1971) (en banc), *vacated on other grounds*, 408 U.S. 939, 92 S.Ct. 2875, 3 L.Ed.2d 762, *rehearing denied*, 409 U.S. 899, 93 S.Ct. 182, 34 L.Ed.2d 155 (1972). In *Pate v. Robinson, supra*, the Illinois procedure required that a jury be impaneled to make the determination of competency. Obviously, it would have been impossible for a jury at a later date to benefit from its own observation of the defendant at time of trial. In *Drope v. Missouri, supra*, expert testimony based upon findings made at or near time of trial was not available and no procedure had been instituted at that time in accordance with the state's statutes on competency determination.

By way of contrast, the circumstances of this case demonstrate a reasonable expectation that a hearing at this time may overcome the deficiencies in the proceedings in 1971. *Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973); *Carroll v. Beto*, 421 F.2d 1065 (5th Cir. 1970); *United States v. Silva*, 418 F.2d 328 (2d Cir. 1969).

Accordingly, the judgment will be vacated and this case remanded to the district court which shall afford the state the opportunity to schedule a post-conviction hearing before the original trial judge. The Common Pleas Court shall then determine, if possible, the competency of petitioner to stand trial and to plead guilty on September 20, 1971. Our opinion shall not be construed as bearing upon the proper determination of that issue because we have not considered nor passed upon it.

Until a record of such a hearing is made, we are unable to decide that a retrospective determination of competency to stand trial or plead can in fact be made by the state court in a manner that will satisfy the requirements of 28 U.S.C. § 2254(d) (1948), and of *Townsend v. Sain, supra*. Ultimately the habeas corpus court using federal standards must review whatever record is made to find whether such a determination was adequate. Moreover, we do not intend to suggest that the state court is precluded from ruling as a matter of state law that a retrospective determination should not or could not be made. We are aware of the difficulties inherent in conducting a retrospective competency hearing four years after the initial trial to which the Supreme Court referred in *Pate v. Robinson, supra*, and *Drope v. Missouri, supra*, and which led the Court in those cases to prefer new trials rather than competency hearings. In the event the state court so decides, of course, a new trial and a reopening of the plea proceedings would be required.

The district court shall retain jurisdiction, and, in the event that the state does not arrange for a hearing within ninety days or such other time as the district court deems reasonable, the writ shall issue conditioned upon the grant of a new trial and a reopening of the plea proceedings.