UNITED STATES of America

v.

Rodney G. GREENE.

Crim. No. 88–00358–01.

United States District Court,
E.D. Pennsylvania.

Oct. 4, 1989.

Rodney G. Greene, Oakdale, La., pro se.

Ewald Zittlau, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On October 21, 1988, Rodney Greene pleaded guilty before this Court to eight counts of bank fraud in violation of 18 U.S.C. § 1344, one count of possession of stolen mail in violation of 18 U.S.C. § 1708, and one count of uttering a forged United States Treasury check in violation of 18 U.S.C. § 510. On December 7, 1988, the Court sentenced defendant to seven years incarceration for the section 510 offense and five years for the bank fraud charges, with the two sentences to run concurrently. For his unlawful possession of stolen mail, the Court placed defendant Greene on probation for a term of five years and ordered him to pay a total special assessment of $500.00.

Defendant Greene then petitioned the Court under Federal Rule of Criminal Procedure 35(a) to correct a putatively illegal sentence. He argued that the special assessments were invalid because their authorizing legislation, 18 U.S.C. § 3013, originated in the United States Senate, contrary to article I, section 7 of the United States Constitution. The Court, holding that section 3013 was not a revenue bill subject to the origination clause, denied the Rule 35(a) motion. *United States v. Greene*, 709 F.Supp. 636 (E.D.Pa.1989) (Broderick, J.).

Afterward, defendant filed a motion for reduction of sentence pursuant to Federal Rule of Criminal Procedure 35(b). In denying the motion, the Court stated that two of defendant's grounds for relief could not be adjudicated under Rule 35(b), but only in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2255. Rodney Greene now properly has asserted those grounds and others in a section 2255 petition.

First, petitioner presents three interlocking claims. He states that he was compelled to provide handwriting exemplars in violation of his right not to incriminate himself as secured by the fifth amendment of the United States Constitution and without being apprised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny. Petitioner further contends that because his attorney failed to bring the purported violation of *Miranda*'s strictures to the Court's attention, petitioner was denied the right to effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution. Second, petitioner Greene asserts that he was laboring under a "[p]ossible mental impairment during [the] criminal offense."

It is well established that the decision whether to order an evidentiary hearing for a section 2255 motion is committed to the sound discretion of the district court. *United States v. Nino*, 878 F.2d 101, 103 (3d Cir.1989). In exercising that discretion, however, the court must accept as true the movant's factual allegations, unless they plainly are frivolous on the basis of the existing record. *United States v. Williams*, 615 F.2d 585, 591 (3d Cir.1980). The district court need not conduct an evidentiary hearing if "the motion and files and records conclusively show that the prisoner is entitled to no relief." *United States v. Baynes*, 622 F.2d 66, 68 (3d Cir. 1980); *see also United States v. Leiby*, 820 F.2d 70, 73 (3d Cir.1987). Discerning this to be the case here, the Court, pursuant to 28 U.S.C. § 2255, Rule 8(a), finds that an evidentiary hearing is not required and denies petitioner Greene's motion.

### I.

■ Petitioner Greene pleaded guilty to the crimes for which he was incarcerated. That admission bars petitioner from challenging the constitutional validity of governmental conduct that occurred before the plea was entered. As the Supreme Court recently stated,

> [W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to

whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce,* —— U.S. ——, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *see also Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984) (indicating "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked"); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (holding "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea" not judicially cognizable on habeas review); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970).[1] Instead of pleading guilty, petitioner had—and was informed of—the right to challenge the admissibility of certain evidence, proceed to trial, and seek appellate review of any errors he believed infected the district court proceedings. He "chose not to, and hence relinquished that entitlement." *Broce, supra,* 109 S.Ct. at 763. In his section 2255 motion, petitioner Greene does not contest that his guilty plea was voluntary and counseled. Rather, he asserts claimed constitutional deprivations that antedated the plea and contends that he might not have been mentally competent at the time of the offense. Because petitioner does not challenge the plea as such, his present contentions, although perhaps relevant to evaluating the competency of his representation, cannot serve as independent grounds for relief under section 2255. *Id.* at 765; *Tollett, supra,* 411 U.S. at 267, 93 S.Ct. at 1608.

## II.

■ Even apart from petitioner's lack of entitlement to attack collaterally his conviction, however, none of the allegations demonstrate that his imprisonment is the result of governmental activity condemned by the Constitution. There simply is no merit to the argument that the compelled production of handwriting exemplars violates the guarantee against self-incrimination. That right prohibits officials only from forcing an accused to provide "testimonial or communicative" evidence, rather than evidence of a "real or physical" nature. *Schmerber v. California,* 384 U.S. 757, 761, 764, 86 S.Ct. 1826, 1830, 1832, 16 L.Ed.2d 908 (1966). Drawing on the *Schmerber* distinction in *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Supreme Court held that a "mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic" and therefore is outside the protection of the fifth amendment. *Id.* at 266–67, 87 S.Ct. at 1953–54; *see also In re Special Federal Grand Jury,* 809 F.2d 1023, 1025 (3d Cir.1987).

■ Petitioner also states that the exemplars were secured by threats of arbitrary incarceration—*i.e.,* that if he did not produce the exemplars, petitioner would be imprisoned without having committed a crime—in violation of the fifth amendment[2] and that if petitioner had had an attorney present at the time, he would not have generated the handwriting samples until he had been indicted. Petitioner, however, produced the exemplars under a subpoena, the validity of which he does not challenge. If petitioner had declined to comply with the order, he in fact likely would have been jailed, with his failure to produce the demanded exemplars constituting the predicate offense. *See* 28 U.S.C.

---

1. *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), and *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), fashioned an exception to this rule, but it is not applicable here. Those cases stand for the proposition that when the Constitution divests the government of the authority to hale a defendant into court at all on a charge, a guilty plea does not foreclose federal collateral review

of the conviction. *Menna, supra,* 423 U.S. at 62, 96 S.Ct. at 242; *Blackledge, supra,* 417 U.S. at 30–31, 94 S.Ct. at 2103–04.

2. Petitioner does not indicate who related these threats to him, but for purposes of today's decision we assume that person was a government actor.

§ 1826(a); *United States v. Euge,* 444 U.S. 707, 718 & n. 14, 100 S.Ct. 874, 882 & n. 14, 63 L.Ed.2d 141 (1980); *In re Grand Jury Proceedings (Schofield I),* 486 F.2d 85 (3d Cir.1973) (defining required contempt procedures); *In re Grand Jury Subpoena,* 558 F.Supp. 50 (S.D.N.Y.1983). Nothing in the Constitution forbade officials at that point from truthfully informing petitioner of the consequences of noncompliance with a lawfully issued subpoena. Similarly, because petitioner was not entitled to wait for an indictment before conforming his behavior to the subpoena's dictates, *see Schofield I, supra,* and because the compelled creation of exemplars did not represent a critical stage in criminal proceedings that triggered the right to the assistance of counsel, *Gilbert, supra,* 388 U.S. at 267, 87 S.Ct. at 1953, the second component of petitioner's argument cannot support relief under section 2255.

■ Petitioner Greene next claims that he was forced to provide handwriting exemplars and interrogated during their procurement without being apprised of his constitutional rights as required by *Miranda.* The event of which petitioner complains involved Sylvester Sutton, an Inspector for the United States Postal Service who obtained Greene's handwriting samples on May 13, 1986. By petitioner's account, while Greene was producing the exemplars, Inspector Sutton told him that if he cooperated, the Inspector personally would ask the judge "to go light on you because you cooperated." Petitioner replied, "I would love to help you, but I don't know what you're talking about. Am I being charged with a crime?" "If we have enough evidence to indict you," Inspector Sutton then said, "we'll let you know. You'll be the first to know." Petitioner ended the conversation by stating, "Well, I'd rather not say any more without my attorney present." Petitioner Greene claims that Inspector Sutton never in-

formed him of his rights as required by *Miranda.*

Although the Court believes that petitioner's factual allegations are frivolous,[3] the Court need not rest its decision on that ground alone. *Miranda* warnings are necessary only when an accused is subject to custodial interrogation. *Oregon v. Mathiason,* 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). The taking of an exemplar is not "interrogation," but rather the collection of physical evidence, and therefore is plainly outside the *Miranda* doctrine's reach. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972); *Gilbert, supra,* 388 U.S. at 266–67, 87 S.Ct. at 1953; *United States v. Snider,* 499 F.2d 424, 425 n. 1 (5th Cir.1974), *cert. denied,* 419 U.S. 1115, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

Further, petitioner has not demonstrated or even alleged that he was "in custody" when the verbal exchange with Inspector Sutton transpired. An individual is "in custody" when a reasonable person would believe that he has been "deprived of his freedom of action in any significant way." *Miranda, supra,* 384 U.S. at 444, 86 S.Ct. at 1612; *see also Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Petitioner Greene, however, had not been charged with a crime or indicted before the incident. Nor was petitioner under arrest at the time. Instead, he appeared at the United States Courthouse building in Philadelphia for the limited purpose of providing handwriting exemplars, fingerprints, and photographs, as is plain on the subpoena's face. That embraced the whole of his obligation, the only limitations on his freedom, and once he had discharged those narrow duties, he was free to leave. Conversely, petitioner has not identified a single circumstance suggesting that he was thrust into an inherently coercive or menacing atmosphere similar to the one "encountered by an in-custody defendant interrogated incommunicado at the po-

---

**3.** Inspector Sutton has testified under oath that he advised petitioner of his rights on that occasion. Transcript of Sentencing, Dec. 7, 1988, at 8. At that time, neither petitioner nor his attorney disputed the testimony. Moreover, petition-

er's own words—namely, his immediate invocation of the right to remain silent and the right to an attorney—sharply corroborate Inspector Sutton's version of the episode.

lice station ..." *United States v. Plesons*, 560 F.2d 890, 894 (8th Cir.) (declining to adopt *per se* requirement that *Miranda* warnings be given to respondent of documentary summons), *cert. denied*, 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977). As such, there is little reason for the Court to extend *Miranda*'s safeguards to the much more benign situation in which a suspect is compelled by subpoena to produce nothing more than handwriting exemplars, photographs, and fingerprints and to do so in a location other than a stationhouse.

■ Petitioner Greene further charges that he was denied effective representation of counsel. Specifically, petitioner complains that although he had informed his attorney that the government had failed to adhere to *Miranda* procedures, counsel did not assert that fact before the Court. Petitioner's contention must be evaluated against the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, he must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. Second, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. at 2068. In employing this test, the court must "[i]ndulge a strong presumption" that counsel's conduct falls within "the wide range" of reasonable legal assistance. *Id.* at 689, 104 S.Ct. at 2065 (citing *Michel v. Louisiana*, 350 U.S. 91, 100–01, 76 S.Ct. 158, 163–64, 100 L.Ed. 83 (1955)). The Constitution, in short, does not "mandate a flawless performance on the part of counsel." *Virgin Islands v. Bradshaw*, 726 F.2d 115, 119 (3d Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984).

Again, although the Court believes petitioner's allegation is frivolous,[4] it need not dispose of the question solely on that basis. Given that the precepts of *Miranda* were not violated under the circumstances of this case and the existence of a credible witness who would have contradicted petitioner's claim that he was never administered his *Miranda* warnings, petitioner's attorney acted reasonably in not arguing the issue. *See Senk v. Zimmerman*, 886 F.2d 611, 615 (3d Cir.1989) (stating courts rarely find "attorneys have acted unreasonably under prevailing professional standards when they do not make an objection which could not be sustained on the basis of existing law"). Petitioner, moreover, does not show any prejudice emanated from his counsel's failure to press the matter. Because the statements Inspector Sutton elicited from petitioner had no pertinence to the question of culpability and did not form any part of the evidence against petitioner, it could not have altered the calculus that persuaded petitioner and his attorney that a guilty plea was the soundest course or otherwise affect the outcome of the proceedings.

### III.

Last, petitioner Greene asserts that he may have been mentally impaired "during the criminal offense." For support, petitioner cites an October, 1984 psychological evaluation conducted on behalf of the Philadelphia Adult Probation Department after petitioner had been arrested for theft. Greene's federal Presentence Report discloses that he was diagnosed at that time as possessing a "mixed-character disorder with narcissistic, midly [sic] schizoid and dyssocial trait." Presentence Rep., Nov. 28, 1988, at 10. The psychiatrist evaluating petitioner recommended that he receive counseling or psychotherapy to assist him in understanding how to best control his dissocial tendencies. The Philadelphia County Court judge for whom the 1984 report was prepared as an aid in sentencing

---

4. While testifying under oath, the petitioner engaged in the following dialogue with the Court:
   [The Court] Now, of course, standing alongside of you is Jeff Staniels. He's the lawyer in this case.
   [Rodney Greene] Yes.
   Q Have you been satisfied with the representation he's been giving you?
   A Yes, I am.
   Change of Plea Transcript, Oct. 21, 1988, at 4–5.

accepted petitioner's guilty plea to theft charges and placed him on probation for two years. That court did not order petitioner to receive treatment. As of November, 1988, he had never participated in counseling.

Petitioner strictly does not attack the voluntariness of his October, 1988 guilty plea. Rather, he indicates that he may have been incompetent when he transacted the federal offenses between late November, 1985 and early May, 1986. Reading the section 2255 motion liberally, however, the Court deduces that petitioner invokes the October, 1984 examination to suggest a lack of capacity when he committed the fraud, which in turn is some evidence that he was impaired mentally at the time of his October, 1988 guilty plea. In this sense, then, petitioner appears to challenge the voluntariness of his plea.

■ It is beyond purview that the conviction of a person while he or she is legally incompetent violates due process. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). The test for competency to enter a valid guilty plea is identical to the one for capacity to stand trial, namely, "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *United States v. Hewitt,* 528 F.2d 339, 342 (3d Cir.1975) (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)); *see* 18 U.S.C. § 4241 (framing standard as "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"). Although the question which party bears the risk of nonpersuasion under the circumstances of this case is a difficult and interesting one, *see United States v. Hollis,* 569 F.2d 199 (3d Cir.1977) (discussing burden of proof when competency issue presented on habeas review), the Court need not resolve the point because the evidence admits no doubt that when petitioner pleaded guilty he possessed the requisite mental acuity to consult meaningfully with counsel and to comprehend the proceedings against him.

First, we note that the psychological evaluation does not even remotely indicate to the contrary. Petitioner was found, at bottom, to be self-centered and dissocial, characteristics that surely define the great mass of criminal offenders in this nation. The psychiatrist did not believe the disorder was sufficiently grave to merit medication, commitment, further observation, or even mandatory counseling as a probation condition. She merely recommended counseling. If anything, the evaluation, by virtue of its failure to discover petitioner was gripped by a disorder that interfered with normal thought processes, affirmatively supports the conclusion that he was competent to enter the plea. Moreover, because the condition was not deemed organic or chronic, a 1984 evaluation has exiguous and tenuous bearing on petitioner's mental state in October, 1988. The sophistication of the crime committed by petitioner during those intervening years indicates that in fact his cognitive capabilities were quite acute.

Second, as noted earlier, petitioner Greene alleges in his motion that his attorney performed inadequately because he had declined to assert a *Miranda* claim of which petitioner had informed counsel. Thus, the habeas petition itself reveals that he not only meaningfully consulted with his attorney, he actually advised counsel of possible irregularities in the proceedings against him and suggested legal theories under which his case might be tried.

Last, the Court had occasion to witness the petitioner's demeanor when he entered the guilty plea. Petitioner does not allege in his section 2255 motion that the Court neglected to comply with Federal Rule of Criminal Procedure 11, which regulates plea procedures. The Court, therefore, may rely in part on the colloquy of October, 1988 to resolve expeditiously on habeas review petitioner's claim of mental incompetence. *McCarthy v. United States,* 394 U.S. 459, 465–67, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969).

Unlike the defendant in *United States v. Auen,* 846 F.2d 872 (2d Cir.1988), for example, petitioner did not exhibit bizarre behavior, but indeed appeared to be cogent in speech and thought. Nor did any matter in petitioner's history, other than the 1984 evaluation discussed above, or in his answers during the colloquy have reason to alert the Court that he was suffering from a mental condition sufficiently serious to render him legally incompetent to enter a plea. There was no indication that he failed to grasp the import of the overall proceedings or the consequences of his guilty plea. Indeed, all the evidence adduced at the colloquy showed the petitioner to be a rational individual.

> [The Court] Are you under medical care of any kind now?
>
> [Rodney Greene] No, I'm not.
>
> Q And do you use drugs?
>
> A No, I don't.
>
> Q How about excessive amounts of alcohol?
>
> A No, I don't.
>
> Q Have you ever been treated by a psychiatrist?
>
> A No.
>
> The Court: And now I'm going to ask your counsel here, Mr. Staniels, as well as counsel for the Government, do either of you have any question in your mind concerning this man's competence to change a plea this morning?
>
> Mr. Staniels: No, I do not, sir.
>
> Mr. Zittlau: No, Your Honor.

Change of Plea Tr., at 4. After inquiring whether petitioner understood the factual and legal bases of the charges against him and receiving affirmative answers from the petitioner, the Court found that his "change of plea has been knowledgeable, because I observed on the basis of your answers, and I might add on the basis of the scheme which you perpetrated[, that y]ou're an intelligent young man, and your testimony shows that you know [w]hat you're doing here today." *Id.* at 21.

The Court never approaches lightly claims that a criminal defendant is suffering from a mental or physical illness or that a plea was not voluntary. This concern arises not only because of the due process implications of the allegations, but also because the Court is in accord with the humane policies expressed in 18 U.S.C. § 4241 *et seq.* and Rule 11. Under the circumstances presented here, however, where the evidence does not suggest "such substantial questions" about the petitioner's competency that an evidentiary hearing is necessary, *Hewitt, supra,* 528 F.2d at 342, but instead conclusively shows petitioner was able to consult knowledgeably with his lawyer and to understand the consequences of his guilty plea, the Court must find the petitioner was competent and deny his motion.