J-S59030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD M. DODDS | : | No. 2222 EDA 2018 |

Appeal from the PCRA Order Entered June 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014515-2010

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

CONCURRING MEMORANDUM BY LAZARUS, J.: Filed: September 24, 2020

Based on the record before us, I concur with the majority's decision to reverse the PCRA court's order granting Dodds relief.  I write separately, however, to emphasize that due process requires a defendant be competent to stand trial in that he:  (1) understands the charges and proceedings against him; and (2) is able to assist in his own defense.  ***U.S. ex. rel. McGough v. Hewitt***, 528 F.2d 339 (3d Cir. 1975) ("The conviction of a person while he is legally incompetent violates due process."); ***Commonwealth v. Hughes***, 555 A.2d 1264, 1271 (Pa. 1989) ("[A] mental or physical disorder must interfere with one's ability to understand the proceedings *or* to assist counsel before it is sufficient to constitute incompetency.") (emphasis added); ***Commonwealth ex. rel. Hilberry v. Maroney***, 227 A.2d 159, 160 (Pa. 1967) ("The test to be applied in determining the legal sufficiency of [one's]

mental capacity to stand trial . . . [is] his ability to comprehend his position as one accused [] *and* to cooperate with [] counsel in making a rational defense. . . . Otherwise, the proceedings [] lack due process.") (emphasis added).

Where a defendant seeks to establish on appeal that he was unable to assist with his own defense such that his right to a fair trial was violated, he must demonstrate through clear and convincing expert testimony that his condition at the time of trial actually prevented him from assisting in his own defense, specifying how and why he was unable to assist. Some indicia of mental difficulties *vis-à-vis* medication would be insufficient. **See Commonwealth v. Long**, 456 A.2d 641 (Pa. Super. 1983) (taking medication did not render defendant incompetent to plead guilty); **Commonwealth v. Hughes**, 555 A.2d 1264 (Pa. 1989) (taking medication did not render defendant incompetent to stand trial). Bald allegations from trial counsel of defendant's inability to assist would also be insufficient.

Dodds submits that "[t]here is a long line of case law which states that a defendant must be able to meaningfully participate in his defense." Brief of Appellant, at 13, citing **Atkins v. Virginia**,[1] 536 U.S. 304, 320 (2002) and

---

[1] This case is inapposite; in **Atkins**, **supra**, the Supreme Court mentions in *dicta* that individuals who are mentally handicapped are less able to assist with their own defenses than other accused criminals. **See id.** (holding that execution of a mentally disabled individual constitutes cruel and unusual punishment).

*U.S. v. Renfroe*, 825 F.2d 763 (3d Cir. 1987). As Dodds notes in his appellate brief, the Pennsylvania Supreme Court, in *Commonwealth ex. rel. Hilberry v. Maroney*, *supra*, articulated the test for determining whether one is competent to stand trial, quoted above, and how that test relates to due process.

In *Commonwealth ex. rel. Hilberry*, the defendant, who pled guilty to killing his wife, challenged the validity of his conviction and sentence, alleging that he was "mentally incompetent and unable to comprehend his acts" at those times. *Id.* at 160. The Supreme Court noted that there was "significant testimony in the record which could lend credence to and support [] a finding" that the defendant lacked mental competency at the controlling times, including expert testimony that his mind was that of a five-to-eight year old before trial, that of a thirteen year old at trial, and that he was previously committed to Farview State Hospital for the criminally insane. *Id.* at 161-62. The Court found, however, that "at all relevant times[, defendant] had a rational understanding of the nature of the plea and sentence proceedings; [] he had a rational and factual understanding of the charges involved; [and] he *was able to and did cooperate in a rational manner in assisting his lawyers in preparing a defense*." *Id.* at 162 (emphasis added). In making the final conclusion, the Court noted, among other things, that:

> [defendant, after voluntarily confessing his crimes to the police,] manifested a clear understanding of his position and the fact that he was charged with the murder of his wife. . . . *He discussed with [counsel] the advisability of standing trial before a jury*, the

> possible consequences thereof, or whether it was best to admit his guilt and throw himself on the mercy of the court. *He also discussed with them the advisability of his testifying in court and accepted their recommendation that he refrain from doing so.*

*Id.* (emphasis added);[2] *cf. Dusky v. U.S.*, 362 U.S. 402 (1960) (where psychiatrist presented undisputed testimony that defendant's schizophrenia causes "disturbances in the ability to think clearly," "an inability to interpret reality from unreality," and "*would or could disable him from adequately assisting his counsel in his defense*," record did not support finding of defendant's competency to stand trial despite expert testimony that he was "oriented as to time and place and person" and understood charges and proceedings against him) (emphasis added).

In the controlling cases where a defendant was awarded a new trial on due process grounds, the trial courts failed to conduct any inquiry into the defendant's competency. In *Drope v. Missouri*, 420 U.S. 162 (1975), the

---

[2] In *Hughes*, *supra*, the defendant, who had just turned 18, was sentenced to death after a jury convicted him of, *inter alia*, first-degree murder and rape following the killing of a nine-year old child. Prior to trial, Hughes was evaluated by three doctors who opined that he was competent to stand trial—at least one of whom *expressly stated that Hughes had the ability to comprehend the charges against him and cooperate with counsel in his defense*—and a fourth doctor who opined that he was incompetent. *Id.* The Court articulated the standard set forth in *Commonwealth ex. rel. Hilberry*, *supra*, to evaluate Hughes' competency, but did not specify what constitutes a sufficient "ability to . . . cooperate with [] counsel in making a rational defense" such that due process is satisfied. *See Hughes*, *supra* at 1270-71. Ultimately, the Court rejected Hughes' contention he was incompetent to stand trial where the trial court credited the testimony of two of the Commonwealth's expert witnesses over the testimony of Hughes' sole expert witness, which was based on "contradictory factual conclusions." *Id.*

defendant, who faced the death penalty, filed a pre-trial motion for a continuance so that he might be further examined and receive psychiatric treatment; he attached a psychiatric evaluation that described his mental illnesses, "borderline mental deficiency," episodic irrational acts, and "irrelevant [] speech." *Id.* at 175-76. The trial court found that the "inartfully drawn" motion "did not clearly suggest that petitioner's competence to stand trial was the question sought to be resolved," denied the motion, and heard no evidence as to defendant's competence to stand trial. During trial, the defendant unsuccessfully attempted suicide and "was [therefore] absent for a crucial portion of his trial." *Id.* at 180. Despite his absence, the trial court denied his motion for a mistrial on the ground that his absence was voluntary, and the trial proceeded; the jury returned a guilty verdict and defendant was sentenced to life imprisonment. *Id.* at 162. Following an appeal,[3] the United States Supreme Court reversed Drope's conviction and judgment of sentence and remanded the case, noting that, because of his absence during a critical stage of his trial, neither the judge nor counsel was able to observe him, "and the hearing on his motion for a new trial, held approximately three months

_____

[3] The Missouri Court of Appeals affirmed, holding that neither the psychiatric report attached to [Drope's] motion for a continuance nor his wife's testimony [describing "strange behavior"] raised a reasonable doubt of his fitness to proceed, that [Drope's] suicide attempt did not create a reasonable doubt of his competence as a matter of law, and that he had failed to demonstrate the inadequacy of the procedures employed for protecting his rights. *Drope*, *supra* at 162.

after the trial, *was not informed by an inquiry into either his competence to stand trial or his capacity effectively to waive his right to be present*." ***Id.*** at 182 (emphasis added); ***see also U.S. ex. rel. McGough v. Hewitt***, 528 F.2d 339 (3d Cir. 1975) (finding defendant entitled to additional competency evaluation and vacating conviction based on ***Drope*** where, although defendant was deemed competent to stand trial, psychiatrist who made that determination reported "[h]e may experience some *difficulty in cooperating with his lawyers, since he sometimes behaves negativistically, especially when stressed*," and defendant presented expert testimony at PCRA hearing that he was not competent to stand trial two years earlier) (emphasis added).

In ***Renfroe***, ***supra***, the district court refused to consider whether the defendant had been competent at the time of trial. An expert witness testified at a post-trial "due process and sentencing hearing" that defendant's "cocaine addiction *would affect [his] capacity to confer effectively with counsel*, that there was a 'real question' in his mind as to whether [defendant] could effectively focus and assist counsel, and that [defendant] was *suffering from a defect which affected his ability to cooperate effectively with counsel*." ***Id.*** at 767 (emphasis added). Defendant, who had a number of mental illnesses and used cocaine for sixteen years prior to trial and during his federal trial, forbade his attorneys from developing a defense that incorporated his drug use. In remanding the case to the district court, the Third Circuit court stated that "[o]n these facts, . . . there was reasonable cause to question

[defendant's] competence[, and he had] a right to a hearing to determine his competency." **Id.**

Instantly, unlike the defendants in **Drope** and **Renfroe**, Dodds was afforded a pre-trial competency evaluation where he was deemed competent to stand trial.[4] Furthermore, unlike the defendants in **Dusky**, **Renfroe**, and

---

[4] With regard to the fact that Dodds was falling asleep during his trial, we note that at the PCRA hearing, trial counsel testified: "[Dodds], maybe, I'm not sure if it was because he changed his medication or took it or didn't take it, was very sleepy. So *while his demeanor was essentially the same* [as the day before], *he was more tired* and not as much with it as I thought." N.T. PCRA hearing, 5/23/16, at 29 (emphasis added). At that point, trial counsel requested the second competency evaluation, which was denied. Trial counsel further testified at the PCRA hearing that:

> [Dodds] had a mild improvement throughout the trial in that he . . . was more alert[.] . . . I know that during one of the trial days, in particular, he was falling asleep next to me. He attributed that in conversations from not sleeping well the previous days. . . . I know *during the trial he was not as sleepy as the trial progressed*. I thought it was a situation where he was getting more sleep. I can't attribute why he was getting more sleep, but *he seemed more alert*. . . . He was not as sleepy after that day.

**Id.** at 29-30 (emphasis added).

This Court previously rejected Dodds' argument that the trial judge abused her discretion in denying a second competency evaluation within 24 hours of his first. **See Commonwealth v. Dodds**, 287 EDA 2014, 2014 WL 10558255, *1-*2 (Pa. Super. filed Nov. 25, 2014) (unpublished memorandum decision). We note that there is an important distinction between falling asleep and being asleep, the latter having potential to constitute absence from trial. We find the facts here remarkably distinguishable from **Drope**, **supra**, where the defendant, who received no competency evaluation, spent a crucial portion of his trial physically absent from the courtroom due to his suicide attempt. Here, where the record is amorphous, we defer to the trial court

*U.S. ex. rel. McGough*, Dodds has not presented any expert testimony or psychiatric evaluations expressing that he was suffering from a defect that would, could, or did impact his ability to effectively consult with counsel, either before trial, during trial, or at the PCRA hearing.[5]  The only indication thereof on the record is that trial counsel used those "magic words" less than 24 hours after Dodds was deemed competent.  Curiously, in his appellate brief, Dodds fails to even complete his argument as to why he could not assist with his own defense by testifying as to his state of mind at the time of the shooting.

> *Defense counsel admitted that he could not call the Appellee to testify on his own behalf because*  [blank spaces intentional]  The state of mind of the Appellee was the critical issue in the case at the time of the incident because if he had a reasonable belief of fear of imminent serious bodily injury or death, obviously a verdict of guilty would not have been appropriate.

Brief of Appellant, at 16 (emphasis added).

_____

judge, who is in the best position to evaluate what is going on in her courtroom.

[5] Similarly, Dodds did not present any testimony either at trial or at the PCRA hearing regarding what his state of mind was at the time of the shooting; without knowing what the substance of his testimony would have been, there is no way to conclude that, had he obtained a continuance and been able to testify at a later date, there is a reasonable probability that the outcome of his trial would have been different.  This is particularly true in light of the compelling testimony from a number of witnesses refuting any claim of self-defense (i.e., a reasonable belief of imminent serious bodily injury) that Dodds may have attempted to make on the stand.  Such testimony included that Dodds shot the unarmed victim from approximately ten feet away while the victim held his palms open in a gesture of surrender, with no one else near him.  **See** N.T. Trial, 7/11/13, at 66-102.

In fact, trial counsel's own testimony belies the claim that Dodds was unable to participate in his own defense.

Q: And he has to be able to assist in the defense, correct?

A: [H]e helped me pick the jury.

Q: Right. So he's obviously assisting in the defense?

A: Yes.

       *     *     *

Q: And *he had no problem at all seeming to understand and help you decide whether or not he should testify*, correct?

A: He was — at the point where we had a conversation about whether he should testify, he was — *he understood what we were talking about*. And I had his parents with me so they would be a part of that conversation.

Q: And we're not talking about whether or not he would have been the best on the stand, *we're just talking about was he able to participate in the defense, in the strategy. Was he able to participate?*

A: *Yes. He was an active participant in the discussion about whether he should testify or not.*

Q: And in your opinion, would he have been able, if you did put him on the stand, to rationally answer the questions?

A: He would have answered the questions. I don't think he would have been the best witness.

Q: Right. Just because of the way he would have presented?

A: Correct.

Q: Not due to an inability to understand the questions and give appropriate responsive answers, correct?

A: He would have — *there was nothing in our conversation that would lead me to believe that he would not understand the*

*questions on cross*. My concern with presenting him was that the physical manifestations of his condition would have the jury conclude that he must have shot [the victim] because of some mental illness that he had.

Q: Right. So you're basically trying to get in, as counsel always does, trying to get into the minds of the jurors and anticipate how they may react to whatever evidence you presented correct?

A: Correct.

Q: But *he could have presented the evidence*?

A: *If he had told me after all we had discussed that he wished to testify, I would have put him on the stand*.

N.T. PCRA hearing, 5/23/16, at 57-59 (emphasis added).[6]

Accordingly, the record reflects that, like the defendant in

**Commonwealth ex. rel. Hilberry**, **supra**—who presented much more

compelling evidence of incompetency and an inability to confer with counsel

than Dodds—Dodds actively participated in a meaningful discussion with trial

_____

[6] Trial counsel explained that,

[W]hile it would have been my preference to call [Dodds to testify], [his testimony] was, in essence, cumulative [to] the testimony as to what Shannon Bouvia already said, because she was present and testified that the people were advancing towards him, and that [Dodds] was saying, don't come forward, don't come forward. Shannon Bouvia was also present when [Dodds] was beat up in the house moments before, and from her testimony, that was a continuous course of action[.] . . . So in my mind, the record — self[-]defense already was present without exposing [Dodds] to being cross-examined.

N.T. PCRA Hearing, 5/23/16, at 46.

- 10 -

counsel about the advisability of testifying in court, and chose to accept counsel's recommendation that he refrain from doing so.

Dodds has not shown any violation of his due process rights because the record does not establish that he was unable to assist with his own defense at the time of trial. Because Dodds received a pre-trial competency evaluation, was deemed competent at the time of trial, and failed to present any expert evidence before trial, after trial, or at a PCRA hearing that he was suffering from a defect that impacted his ability to assist with his own defense at the time of trial, this matter is readily distinguishable from the cases finding a violation of due process where a defendant was unable to effectively assist with his own defense. Accordingly, I concur with the majority.